483 S.E.2d 12

**STATE of West Virginia ex rel.
Katherine Anne HOOVER,
M.D., Petitioner,**

v.

**Honorable Irene C. BERGER, Judge of
the Circuit Court of Kanawha County,
West Virginia Board of Medicine, and
Anne Werum Lambright, Respondents.**

No. 23737.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 29, 1996.

Decided Nov. 15, 1996.

Rehearing Refused Jan. 16, 1997.

Susan Yurko, Furbee, Amos, Webb & Critchfield, Fairmont, for Petitioner.

Deborah Lewis Rodecker, Charleston, for Respondent, W. Va. Board of Medicine.

CLECKLEY, Justice:

This case [1] is before the Court on a petition for a writ of prohibition against the Honorable Irene C. Berger, Judge of the Circuit Court of Kanawha County, by the petitioner, Katherine Anne Hoover, M.D. The West Virginia Board of Medicine (the Board) and Anne Werum Lambright, Hearing Examiner for the Board, are also named as respondents. The Board is investigating a complaint against the petitioner. The petitioner seeks relief from a July 12, 1996, order in which the respondent Judge ordered that Karen R. Meyers, certified court reporter, comply with a subpoena *duces tecum* issued by the Board on May 13, 1996. The subpoena ordered Ms. Meyers to provide the Board

with a copy of a transcript of the Board's April 28, 1996, Complaint Committee meeting at which the petitioner appeared. The petitioner employed Ms. Meyers to record and prepare a transcript of the proceedings. The petitioner argues that the Board is not entitled to a copy of the transcript because the meeting was closed, and the petitioner had the transcript prepared for her own personal use.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding this petition arise out of a complaint questionnaire completed by Karen VanHorn on October 31, 1995, and forwarded to the Board of Medicine. The questionnaire alleged that during an office visit, the petitioner asked Ms. VanHorn's seventeen year–old daughter if she had friends who would visit the petitioner's home to have sex with the petitioner's teenage son.

By letters dated March 29, 1996, and April 8, 1996, the Board's executive director, Ronald D. Walton, requested the petitioner to appear before the Board's Complaint Committee on April 28, 1996, to address the allegations contained in Ms. VanHorn's complaint. Mr. Walton advised the petitioner in both letters that she could be accompanied by legal counsel if she so wished, and that the meeting, though important, would not be a formal hearing. In the second letter, Mr. Walton stated that a formal hearing could be scheduled, based on information obtained in the meeting with the Complaint Committee.

The petitioner attended the meeting on April 28, 1996, without counsel, but accompanied by court reporter Karen Meyers. Prior to the beginning of the meeting, the petitioner was informed by counsel for the Board that the presence of the court reporter would turn the meeting into a public hearing.[2] On

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to

sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. The petitioner included the first two pages of the transcript with her petition. Counsel for the Board restated the Board's position after the

April 29, 1996, counsel for the Board sent a letter to Ms. Meyers requesting a copy of the transcript, which request was refused. On May 13, 1996, the Board issued a subpoena *duces tecum* seeking to compel the court reporter to provide the Board with a copy of the transcript. On May 16, 1996, the petitioner delivered a "Request for Squelching Subpoena to Produce Transcript" to the Board, which the Board forwarded to Hearing Examiner Anne Werum Lambright. Hearings by telephone conference were held between the petitioner, counsel for the Board, and Hearing Examiner Lambright on May 29, 1996, and June 6, 1996. Following these hearings, Hearing Examiner Lambright issued an order dated June 6, 1996, denying the petitioner's motion, stating that "[a]s [the petitioner] has admitted that she requested that the Complaint Committee meeting be public, although she now wishes to change that election, the Complaint Committee meeting was public at her request and there are no legal bases provided to this hearing officer which support a subsequent change to make the meeting a closed session."

On June 11, 1996, the Board filed a petition with the Circuit Court of Kanawha County seeking to enforce the subpoena. Following a hearing on June 26, 1996, the circuit court ordered Ms. Meyers to deliver a copy of the transcript for an in camera inspection. The circuit court issued an order dated July 12, 1996, requiring that Ms. Meyers comply with the subpoena *duces tecum* issued by the Board. The circuit court supported its order with findings, upon review of the transcript, that there were no questions

by the petitioner to indicate any lack of understanding; there was no mention by the petitioner that she had the court reporter at the meeting just to take notes for the petitioner's own private use; and the statement by the petitioner that she very much wanted the proceeding to be public constituted a request that the proceeding be held in public session. The petitioner asks this Court to prohibit the circuit court from enforcing its order.

## II.

## DISCUSSION

■ We are asked in this original action of prohibition to halt a circuit court's order permitting the enforcement of a subpoena *duces tecum*. It is now a familiar and well-rehearsed part of West Virginia jurisprudence that questions of law are entirely within this Court's own purview to decide. To the extent that our decision rests on a conclusion of law, even in this original action, we review the circuit court's subpoena determination whether to order the enforcement of a subpoena duces tecum against a private court reporter under a plenary standard, but under a clearly erroneous standard as to any predicate or subsidiary findings of fact.

■ An administrative agency is but a creature of statute, and has no greater authority than conferred under the governing statutes. *See* Syl. Pt. 3, *Appalachian Regional Health Care, Inc. v. W. Va. Human Rights Comm'n.*, 180 W.Va. 303, 376 S.E.2d 317 (1988); A. Neely, *Administrative Law in*

meeting had begun, as indicated in the following dialogue:

"MS. RODECKER: * * *

"We understand that Doctor Hoover has asked that this meeting be transcribed, and we've explained to her that, in our opinions, it will turn this into a public proceeding rather than remain in executive session and be an informal conference, and that's in accordance with the West Virginia Medical Practice Act and the regulations that accompany that.

"So, this informal conference, then, will be conducted in public and is being conducted in public with a transcript made of that; and furthermore, it's important for everyone to understand that because it's no longer an informal conference, the prohibition on statements

made at this conference not being introduced in any hearing which might occur later on cannot be introduced without the consent of all the parties will be waived because since this is public, therefore, any statements made can, in fact, be introduced into the record of any subsequent proceeding, should there be one. And we don't want there to be any question about that. We want everybody to understand that is the Board's view of this, and for the record, I would appreciate it if Doctor Hoover would acknowledge that before we proceed any further.

"DOCTOR HOOVER: Yes, I also may find it necessary to use some of this information in the public hearing situation, so I very much want it to be public."

*West Virginia* § 3.04, at 60 (1982). Proceedings before the Board of Medicine are governed by the State Administrative Procedure Act[3] and, by virtue of W.Va.Code, 29A–5–1(b) (1986), the circuit court has jurisdiction to review the subpoena in this case. Ordinarily, a circuit court is authorized to quash or modify a subpoena if it is "unreasonable or oppressive." W.Va.R.Civ.P. 45(b)(1). *See West Virginia Advocates for the Developmentally Disabled v. Casey*, 178 W.Va. 682, 685, 364 S.E.2d 8, 11 (1987) ("[W.Va.Code,] 29A–5–1 of [the] Act gives circuit courts jurisdiction to quash or modify a subpoena duces tecum issued by an administrative tribunal based on the standards set out in the West Virginia Rules of Civil Procedure. Rule 45(b)(1) of those rules authorizes a court to quash or modify such a subpoena if it is 'unreasonable and oppressive.' "). The court has broad discretion in determining whether a subpoena is unreasonable, and a decision of the circuit court will be reversed only if it is clearly unreasonable, arbitrary or fanciful. *See Blankenship v. Mingo County E.O.C.*, 187 W.Va. 157, 162, 416 S.E.2d 471, 476 (1992). But, a circuit court by definition abuses its discretion when it makes an error of law.

### III.

### ANALYSIS

Although the parties, especially the Board of Medicine, expend a great deal of energy debating the admissibility of the document sought, this exegesis is largely beyond the point. Excusing for the moment the issue of the propriety of a writ of prohibition, which will be discussed below, the principal question before this Court is much more mundane: Did the Board of Medicine have the authority to issue a subpoena to compel the production of a transcript taken and transcribed by a private court reporter? We

hold that, under the circumstances of this case, it did not.

■ At this juncture, we temporarily shift our focus to the statutory scheme. The statute that empowers the Board of Medicine to issue subpoenas places few restrictions on that power. W. Va.Code, 30–3–7(a)(2), provides that "[(i)]n carrying out the functions, the board may: ... (2) Hold hearings and conduct investigations, subpoena witnesses and documents and administer oaths...." Therefore, any limitations imposed on the Board's sweeping power to issue subpoenas emanate from the requirements and standards that courts previously have established to protect constitutional, statutory and common law rights and privileges.

■ An administrative subpoena *duces tecum* is not self-executing, but is a direction to produce documents subject to judicial review and enforcement. *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 498, 90 L.Ed. 614 (1946). Thus, the subject or target of an administrative subpoena *duces tecum* has an opportunity to challenge the subpoena before yielding that information. *See* W. Va.Code, 29A–5–1(b); *Ebbert v. Bouchelle*, 123 W.Va. 265, 268, 14 S.E.2d 614, 616 (1941) ("it is perfectly clear that the question of complying with its (a subpoena *duces tecum*) commands, if not the resistance of its issuance, may properly be raised in a preliminary procedure"). In the course of that resistance, privileges, privacy rights and the unreasonableness of an administrative subpoena are available defenses against enforcement of the subpoena. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415, 104 S.Ct. 769, 773, 78 L.Ed.2d 567 (1984).

■ The requirements for the enforcement of an administrative subpoena are tightly drawn, but are not onerous. Generally, in order to obtain judicial backing, the

---

**3.** Of course, where a direct enabling statute specifically addresses the particular issue at hand, it is that authority, not the general Administrative Procedure Act, that is controlling. Indeed, we recognized in *West Virginia Human Rights Comm'n v. Moore* that "[t]he state Administrative Procedures Act does not, in and of itself, grant the authority to agencies to issue subpoenas.

Rather, such authority is recognized *if* it is expressly granted by statute." 186 W.Va. 183, 186, 411 S.E.2d 702, 705 (citation omitted). As discussed later in the text of the opinion, W. Va. Code, 30–3–7(a)(2) expressly authorizes the Board of Medicine to issue subpoenas for several purposes including to "conduct investigations."

agency must prove that (1) the subpoena is issued for a legislatively authorized purpose, (2) the information sought is relevant to the authorized purpose, (3) the information sought is not already within the agency's possession, (4) the information sought is adequately described, and (5) proper procedures have been employed in issuing the subpoena. *See United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 368–69, 94 L.Ed. 401 (1950); *Oklahoma Press,* 327 U.S. at 208, 66 S.Ct. at 505; *West Virginia Human Rights Comm'n v. Moore,* 186 W.Va. at 187, 411 S.E.2d at 706 (adopting the federal standards to determine the enforceability of a subpoena); *State v. Harman,* 165 W.Va. 494, 505, 270 S.E.2d 146, 153 (1980) ("There must be: ... [t]he fact that the proof is not otherwise practically available") (citation omitted). We hold that these standards apply to the Board of Medicine in exactly the same way that they apply to subpoenas issued by other agencies. If these concerns are satisfied, the subpoena is presumably valid and the burden shifts to those opposing the subpoena. The party seeking to quash the subpoena must disprove through facts and evidence the presumed relevance and purpose of the subpoena.

The petitioner's central thesis boils down to this: the subpoena should not be enforced because the Board of Medicine issued the subpoena for a purpose or scheme that did not derive from the Board's statutory authority, and that the Board has no legal entitlement to the privately transcribed document. The petitioner claims that the circuit court abnegated its "gatekeeper" function by denying the petitioner's motion to quash an abusive administrative subpoena without making critical findings. As an appellate court, we are particularly sensitive to claims of administrative subpoena "abuse," and when that issue is raised, we give the case and the subpoena *duces tecum* that issued careful scrutiny.

█ At the outset, we observed that this subpoena is directed to a person who is not the subject of the Board's investigation. In this regard, the United States Supreme Court recognized in *Morton Salt, supra,* that the Constitution's reasonableness standard generally affords more protection from administrative subpoenas to individuals who are not targets of the impending investigation. This does not, of course, exempt a person who is not the subject of the investigation from the command of a subpoena. *See Harman,* 165 W.Va. at 505, 270 S.E.2d at 153 ("a subpoena duces tecum [is] available against third parties in both civil and criminal cases ..."). It does mean that the justification for issuing the subpoena to such a person must be clear, and that it must be shown that the information sought must be consistent with the statutory mission and purpose of the agency.

█ Given this set of rules, the Board's argument cannot withstand scrutiny because in this case, neither statutory criterion was met. Significantly, the Board does not assert as its authority for the instant subpoena its power "to hold hearings and conduct investigations" of possible violations of the statute, and/or to assist it in proving its case at an administrative hearing. Before this Court, we are told simply that it wanted the transcript to guarantee the accuracy of its minutes so that the Board and its members would not be criminally liable.[4] In the absence of a more compelling justification for the intrusion of a subpoena *duces tecum* to be served on a privately retained court reporter, we conclude the Board has not demonstrated a proper statutory purpose for the issuance of the instant subpoena. It is by now apodictic that the test of reasonableness is decided by a balancing of one party's need for the requested information, and the other party's right to be free from unjustifiable governmental intrusion. *See* Fleming James, Jr., et al., *Civil Procedure* § 5.14, at 269 (4th ed.1992). Absent countervailing considerations, this standard is to be applied to administrative subpoenas *duces tecum* in West Virginia. Not only is the purpose for the

---

**4.** In an effort to coax a different result, the Board bemoans the increased burden and risk of criminal liability it would face if it was not able to obtain a copy of the petitioner's transcript. We are simply baffled by this argument.

subpoena *duces tecum* beyond the Board's statutory authority, the information sought is already known by the Board. After all, it was the Board's own informal meeting that was allegedly transcribed, and its members and employees were present to hear and take notes which we are told they did. The short of it is that, without some meritorious justification, an administrative subpoena *duces tecum* is not some talisman that dissolves all rights and privileges of the citizens of this State. We do not expect circuit courts will forget that administrative agencies must operate within the limits of their governing statutes. Thus, the circuit court ruling enforcing the subpoena violates the tenet that subpoenas should be related to pending matters, and for a statutory purpose.[5] There can be no greater judicial function of the court than to stand between the government and the citizen, and, thus, to protect the latter from harassment and unfounded intrusion. This Court recognized in *Bouchelle* that meaningful judicial oversight is necessary to prevent a " 'judicial fishing enterprise' " and "unreasonable searches and seizures and meddling curiosity concerning an individual's personal affairs," and these matters "are not to be determined by the exercise of a merely ministerial function." 123 W.Va. at 269, 14 S.E.2d at 616 (citation omitted).

■■■ We cannot help but take notice as an appellate court of the apparent policy inconsistency by the Board in the various cases pending before this Court. In a separate action involving the same parties, the Board argues that a hearing examiner has no authority to issue subpoenas in favor of the petitioner for either investigative purposes or discovery. In *State ex rel. Hoover v. Smith*, 198 W. Va. 507, 482 S.E.2d 124 (1996), the Board argues that in the absence of an explicit statute or rule, there can be no discovery of any kind in favor of the petitioner. Of course, the law recognizes that an agency, such as the Board of Medicine, may not act identically in every case. This lack of uniformity is unavoidable—after all, administrators

are not automatons—and does not in and of itself invalidate agency action. While a certain amount of asymmetry is lawful, an agency may not "adopt[ ] significantly inconsistent policies that result in the creation of conflicting lines of precedent governing the identical situation." *Davila–Bardales v. INS*, 27 F.3d 1, 5 (1st Cir.1994) (citation and internal quotation marks omitted). The precept counselling avoidance of inconsistent administrative policies at least demands that when an agency departs significantly from its own precedent, it must confront the issue and explain the reasonableness of its current position. Before this Court, an agency will not be permitted to flirt serendipitously from case to case, "like a bee buzzing from flower to flower," making up its rules and policies as it goes along.

■■■ On the other hand, today's ruling should not be viewed as a judicial attempt to freeze an agency's jurisprudence for all time; nor, an encroachment on the conduct of the executive branch officials. That is, we are not attempting to govern the conduct of administrative agencies whose task it is to prevent, investigate or prove illegal and unprofessional activities of members of the medical profession. We believe that questions concerning the scope of an agency's substantive authority to regulate and to otherwise perform its statutory function are not to be resolved in subpoena enforcement proceedings. Subpoena enforcement proceedings are designed to be summary in nature, and an agency's investigations should not be bogged down by premature challenges to its regulatory jurisdiction. As long as the agency's assertion of authority is not obviously apocryphal, as is the case here, a procedurally sound subpoena must be enforced. Similarly, the initial determination of what information is relevant for its investigation or formal hearing is left to the administrative agency. To this extent, the circuit court has authority to enforce the subpoena unless the agency determination is obviously wrong, and we will accept the determination of the circuit court unless its ruling is a clear abuse of

---

5. In most cases, a modification of a subpoena is generally preferred to outright quashing, *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir.1984), but here there is simply

no right or entitlement to the document. Thus, even a subpoena of more limited scope would still be unreasonable.

discretion. Therefore, so long as the Board follows its own settled principles and provides a reasonable explanation for its discovery and investigation policies, judicial review is very restricted.

 Although we need go no further, we should attend finally to another detail. Again, we note that the subpoena was directed to an unofficial court reporter retained privately by the petitioner. Before this Court, the parties offered conflicting information as to who possessed the transcript at the time the subpoena issued, and the circuit court made no findings as to this important fact. A subpoena *duces tecum* may not be used to direct a privately retained court reporter to prepare a document that is not in existence. In holding that a court lacked subject matter jurisdiction to order a private court reporter to produce a transcript, the California Court of Appeals for the Fifth District stated:

> Petitioners are not "connected with" the administrative mandamus action within the meaning of the statute. Their sole connection to said action is that they are in a position to produce evidence which does not presently exist—a transcript of the administrative hearing. Petitioner's nexus to the action is indistinguishable from others who have the ability to produce evidence for use in litigation but have not done so—a photographer who has not photographed the accident scene, an accident reconstruction expert who has not attempted to reconstruct the accident, a medical doctor who has not examined the patient, studied the file or formed an opinion. Section 128 cannot reasonably be construed to vest a court with power to order such persons, including petitioners, to perform labor and thereby produce evidence for use in litigation.

*Barwis v. The Superior Court of Stanislaus County,* 87 Cal.App.3d 239, 242, 150 Cal. Rptr. 758, 759–760 (1978) (citation omitted) (footnote omitted).

 A court reporter does not become an ex officio officer of the court or the administrative agency merely by agreeing privately to produce a transcript of the informal meeting between the agency and the petitioner. Nor does a court reporter officially involve herself or himself in matters foreseeably the object of agency inquiry simply by being privately retained to transcribe an informal administrative meeting. Furthermore, as we discussed earlier, the subpoena *duces tecum* does not request an evidentiary document to be used in the Board's investigation or to be used at a pending hearing. Also, the subpoena may very well have been directed to the wrong party.[6] Nevertheless, we agree with the intermediate appellate court of California in *Barwis* that access to the transcript in this case should be governed by contract law, and not our law evolving from subpoena enforcement proceedings:

> Petitioners' legal duty to produce a transcript is governed by contract law. Absent a specifically enforceable contract, petitioners are not obligated to perform the work involved in preparing a transcript ... Respondent court's order has deprived petitioners of the substantive and procedural protections of the law applicable to contract actions; it constitutes an exaction contrary to law.

*Barwis,* 87 Cal.App.3d at 243, 150 Cal.Rptr. at 760 (citation omitted) (footnote omitted).

Obviously, the Board has no cause of action for breach of contract. For the reasons stated above, we find that the circuit court committed clear error when it ordered the enforcement of the subpoena *duces tecum.*

We now turn to the propriety of granting a writ of prohibition in cases challenging the issuance of a subpoena. Although our prior cases have permitted the use of a writ of prohibition to challenge the issuance of a subpoena, *see West Virginia Advocates for the Developmentally Disabled v. Casey,* 178 W.Va. 682, 364 S.E.2d 8 (1987) (writ granted to prohibit circuit court order restricting the scope of subpoena), we have done so without any extended analysis.

 We have held that "[p]rohibition lies only to restrain inferior courts from pro-

---

6. We believe that a critical party is absent from this proceeding. The real party in interest may very well be the court reporter who was not joined in this action. Nevertheless, we are assuming, without deciding, that the interests at stake are those of the petitioner's and the interests of the court reporter are merely coextensive with the petitioner.

ceeding in causes over which they have no jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). Recently, in *State ex rel. Evans v. Robinson*, 197 W.Va. 482, 475 S.E.2d 858 (1996) (per curiam), we emphasized again that where the challenge goes only to abuse of legitimate powers, we " 'will review each case on its own particular facts to determine whether a remedy at law' " makes a writ of prohibition inappropriate. *Id.,* 197 W. Va. at 489 n. 11, 475 S.E.2d at 865 n. 11 (quoting Syl. pt. 2, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973)). In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction, but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight. Of course, where a statute specifically addresses the particular issue at hand, it is that authority, not these general guidelines, that is controlling.

Applying these factors, we find that the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law. The aggrieved party would be compelled to go through a contested hearing and appeal from a final judgment. The unreasonableness of the delay and expense is apparent. As in mandamus, the remedy by appeal is usually deemed inadequate in these situations, and prohibition is allowed. As discussed above, we find that the circuit court has committed clear error of law in approving the issuance of the subpoena.

## IV.

## CONCLUSION

We, therefore, order that a peremptory writ of prohibition issue restraining the Circuit Court of Kanawha County from enforcing its order entered on July 12, 1996, directing the court reporter to produce and serve a transcript of the informal administrative meeting held on April 28, 1996. In so doing, we leave for another day the question whether the actions of the relator were sufficient to convert the meeting into a public meeting, and thereby make statements of the relator admissible in subsequent hearings.

Writ granted.