664 S.E.2d 683

STATE of West Virginia ex rel. BLUE EAGLE LAND, LLC, a West Virginia Limited Liability Company, Coalquest Development, LLC, a foreign limited Liability Company, Consolidation Coal Company, a foreign corporation, Horse Creek Land and Mining Company, a West Virginia Corporation, National Council of Coal Lessors, Inc., a West Virginia Corporation, Penn Virginia Operating Company, LLC, a foreign Limited Liability Company, Pocahontas Land Corporation, a foreign Corporation, West Virginia Coal Association, a West Virginia Non–Profit Corporation, WPP LLC, a foreign Limited Liability Company, and Wolf Run Mining Company, a West Virginia Corporation, Petitioners

v.

WEST VIRGINIA OIL & GAS CONSERVATION COMMISSION, a State Agency, Chesapeake Appalachia, LLC, a foreign Limited Liability Company, Eastern American Energy Corporation, a West Virginia Corporation, and Petroedge Resources (WV), LLC, a foreign Limited Liability Company, Respondents.

No. 33705.

Supreme Court of Appeals of West Virginia.

Submitted March 12, 2008.

Decided May 27, 2008.

Nicholas S. Preservati, Esq., Joseph L. Jenkins, Esq., Preservati Law Offices, Estill Forrest Jones, Jr., Esq., Jones & Associates, Charleston, for Petitioners.

Darrell V. McGraw, Jr., Attorney General, Christie S. Utt, Assistant Attorney General, Charleston, for West Virginia Oil & Gas Conservation Commission.

Kenneth E. Tawney, Esq., Jackson Kelly, Charleston, for PetroEdge Resources.

Timothy M. Miller, Esq., Robinson & McElwee, Keith E. Moffatt, Esq., Chesapeake Appalachia, LLC, Charleston, for Chesapeake Appalachia, LLC.

Susan Wittemeier, Esq., Goodwin & Goodwin, Robert M. Adkins, Esq., Eastern American Energy Corporation, Charleston, for Eastern American Energy Corporation.

David B. McMahon, Esq., Charleston, for Amicus Curiae West Virginia Surface Owners' Rights Organization.

**PER CURIAM:**

In the instant case we find that a writ of prohibition is not an appropriate vehicle to address jurisdictional questions raised regarding certain oil and gas wells. We grant leave for the case to be re-filed as an appeal in circuit court.

## I.

The petitioners are coal-owning and coal-mining companies that object to certain orders issued by the respondent, the West Virginia Oil & Gas Conservation Commission ("the Commission"), a governmental agency established pursuant to *W.Va.Code*, 22C–9–1, *et seq.*, to regulate the drilling of "deep" wells for oil and gas. (More on the distinction between a "deep" and a "shallow" well, *infra.*)

The Commission orders to which the petitioners object involve drilling permit applications that were filed with the Commission by the other respondents in the instant case. These respondents are companies that want to produce gas and oil from the "Marcellus Shale" geological formation. For the wells in question, the Marcellus Shale lies directly above the "Onondaga" formation. And, as will be further seen *infra*, the top of the Onondaga formation is the dividing line between "deep" and "shallow" wells.

The petitioners claim, via a writ of prohibition invoking this Court's original jurisdiction, that the Commission has no jurisdiction to issue orders relating to the proposed wells, because the wells are "shallow wells" that are required to be regulated by the Shallow Well Gas Review Board, established by *W.Va.Code*, 22C–8–1, *et seq.*

The respondents claim that the orders in question were properly issued by the Commission, because the proposed wells in question do not meet the definition of "shallow wells" and do not lie within the Shallow Well Gas Review Board's jurisdiction.[1]

---

1. The Commission and the Shallow Well Gas      Review Board have somewhat different proce-

Although we do not have a record in this original jurisdiction proceeding other than the pleadings, it appears that the proposed wells would be drilled entirely through the Marcellus Shale and would penetrate approximately eighty feet into the Onondaga formation. The penetration into the Onondaga, it appears, is to accommodate tools that are used for preparing the well for production.

The applicable statutory language is found at *W.Va.Code*, 22C–9–2 [1998], which states in pertinent part:

(11) "Shallow well" means any well drilled and completed in a formation above the top of the uppermost member of the "Onondaga Group": Provided, That in drilling a shallow well the operator may penetrate into the "Onondaga Group" to a reasonable depth, not in excess of twenty feet, in order to allow for logging and completion operations, but in no event may the "Onondaga Group" formation be otherwise produced, perforated or stimulated in any manner;[2]

(12) "Deep well" means any well, other than a shallow well, drilled and completed in a formation at or below the top of the uppermost member of the "Onondaga Group"[.]

The petitioners argue that the foregoing definitional language for a "shallow well" includes wells that are "drilled and completed"—that is, established to produce gas from—"above the top of the Onondaga," which is where the Marcellus Shale is located. The petitioners argue that the statute's twenty-feet limit on a shallow well's penetration of the Onondaga is not jurisdictional.

The respondents reply by saying that the twenty-feet statutory limitation on the penetration of a shallow well into the Onondaga is definitional and jurisdictional. The respondents also argue that a "deep well," under the statute, can be a well that is completed "*at* ... the top of" the Onondaga—and that in fact, the Marcellus Shale wells in question will be so completed. (Emphasis added.)

## II.

■ In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

■ We do not have a factual record in the instant case upon which we may adequately evaluate the contentions of the parties, particularly regarding the details of the wells in question. Under the applicable statutory language, it cannot be said, from the limited record before this Court, that the

---

dures and standards in the areas of notice to mineral owners and well spacing, and the petitioners apparently believe that their interests will be better served if the Shallow Well Gas Review Board exercises jurisdiction over the proposed wells. In an *amicus curiae* brief, the West Virginia Surface Owners' Rights Association asserts that oil and gas royalties from deep wells must be "pooled" and distributed among the owners of the gas—as opposed to paying royalties only to the owner of the property where the well is located, if a well is classified as a shallow well. If the instant case is re-filed as an appeal, the West Virginia Surface Owners' Rights Association should be given an opportunity to assert its interests and views.

2. This language is repeated at *W.Va.Code*, 22C–8–2(21) [1994].

Commission's exercise of its jurisdiction is clearly erroneous.[3] Additionally, the petitioners are not without a remedy other than prohibition, because the orders of the Commission that are complained of in the instant case may be appealed to circuit court pursuant to *W.Va.Code,* 22C-9-11 [1998]. All relevant issues may be raised in that forum, including the Commission's jurisdiction. All of these factors militate against this Court addressing the issues raised by the petitioners in the instant original jurisdiction proceeding.

### III.

Based on the foregoing, we grant a writ of prohibition as moulded, and direct that the instant case be dismissed from this Court's docket, with leave for the petitioners to file an appeal of the Commission's orders in circuit court within thirty days of the issuance of the mandate in the instant case, which shall be deemed to be a timely appeal.

Writ Granted as Moulded.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.

Judge JOHN W. HATCHER, JR., sitting by temporary assignment.

---

**3.** That the statutes do not clearly and without dispute entitle the petitioners to relief is illustrated by a bill that was introduced in the 2008 Legislature. Senate Bill 716, introduced on February 18, 2008, was described in its introductory language as "modifying the definitions of 'shallow' and 'deep' wells to allow a shallow well to be drilled deeper; ...". Senate Bill 716 would have changed the definition of a "shallow well" to mean "any gas well, other than a coal bed methane well, drilled no deeper than *one hun-* *dred feet* below the top of the 'Onondaga Group ...'" (emphasis added), and would have removed the language in the current statute that permitted a shallow well to penetrate the Onondaga Group no more than twenty feet. The drafter's note to Senate Bill 716 stated that the purpose of the bill "is to modify the definitions of 'shallow' and 'deep' wells to allow a shallow well to be drilled deeper and to provide clarity to both definitions." Senate Bill 716 was not enacted.