679 S.E.2d 617

**STATE ex rel. J.W., Petitioner**

v.

**The Honorable David W. KNIGHT, Senior Status Judge, Circuit Court Of Mercer County, Respondent.**

**No. 34811.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 2009.

Decided May 14, 2009.

Deborah K. Garton, Assistant Prosecuting Attorney, Mercer County Prosecuting Attorney's Office, Princeton, WV, for the Petitioner.

William Flanigan, Sanders, Austin Flanigan & Flanigan, Princeton, WV, and David B. Kelley, Bluefield, WV, for the Respondent.

**PER CURIAM.**

On behalf of Petitioner J.W.,[1] the State seeks a writ of prohibition to prevent the Circuit Court of Mercer County from enforcing its orders of January 27 and February 3, 2009, which require J.W., the alleged victim of multiple traumatic sexual assaults, to undergo a pelvic examination. Based on Petitioner's age and the gynecological nature of the examination, the State seeks to prevent the examination from transpiring. Jason Wilson, one of the alleged perpetrators of the sexual assaults at issue[2] and the brother of J.W., argues that he has demonstrated the requisite compelling need for the examination at issue. Upon our review of the record in this case in conjunction with applicable law, we find that the trial court did not exceed its authority in directing that Petitioner undergo a limited physical examination. Accordingly, we find no basis for issuing the requested writ of prohibition.

**I. Factual and Procedural Background**

During its February 2008 term, the grand jury sitting in the Circuit Court of Mercer County returned indictments against Jason and Jeffrey Wilson charging them with the commission of various acts of sexual abuse against their sister, the Petitioner. Under the facts as set forth in the indictment, the assaults began in February 2003[3] when the family was living in Arizona and continued to occur after the family relocated to West Virginia until May 2005.

J.W. first reported the alleged abuse to Lawrence Richmond, a counselor who was treating her for ADHD. Initially, she identified Jason as the only perpetrator and denied any abuse on the part of Jeffrey. Later, when she was undergoing therapy for the sexual abuse allegedly committed by Jason, Petitioner identified Jeffrey as an additional perpetrator of sexual offenses against her.[4]

1. Consistent with our practice of protecting the identities of juveniles in sensitive matters, we identify the Petitioner in this matter by initials only. *See State ex rel. Dep't of Human Servs. v. Cheryl M.,* 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987).

2. Another brother of Petitioner, Jeffrey Wilson, has also been indicted for committing multiple acts of sexual assault upon J.W.

3. The indictment charges Jason Wilson with four instances of first degree sexual assault between February 2003 and May 2005 and one count of incest during that same period. Jeffrey Wilson is charged with two counts of first degree sexual assault between March 2004 and September 2005 and one count of incest during that time period.

4. Jeffrey has denied the allegations against him; Jason has only admitted to committing digital penetration of his sister.

Through a motion filed on January 13, 2009, Jason Wilson sought to require Petitioner to undergo a physical examination by a medical expert selected by the trial court.[5] In support of his motion, Jason Wilson referred to alleged statements made by Petitioner to various medical providers, psychologists, and investigators in which J.W. purportedly denied that any physical penetration or intercourse had occurred between Jason and herself. Only later when she was in therapy with Phyllis Hasty[6] did J.W. change her story to claim that Jason had repeatedly had sexual intercourse with her. Through the motion, Jason Wilson requested "a discreet, confidential physical examination by a qualified medical doctor to determine if there is any evidence" of "repeated traumatic intercourse." Citing Petitioner's physical maturity and her age of fifteen years, he contends that the examination is unlikely to cause any "greater emotional upset than the State has already submitted her to" through its prosecution of this case.

According to Jason Wilson, the reversal in Petitioner's story "raises the specter that these allegations could be ... [the] result of suggestive questioning, imagination, or fabrication." In the interest of protecting the confidentiality of J.W., he proposed that the results of the gynecological examination be tendered to the trial court for an *in camera* review. Following that review, the trial court will evaluate whether the results are probative on an issue to be tried and only after such a determination is made, would the results of the examination be provided to the defense. In furtherance of his motion, Jason Wilson argued that this type of examination is routinely performed in cases involving allegations of rape and that it is conducted in a "respectful, discreet and non-threatening manner." Finally, he asserts that the evidence which he seeks from the physical examination is not available from any other source.

After hearing arguments on the motion to permit a physical examination, the trial court concluded that in light of the allegations made in this case and the victim's age, it did not find the requirement of a pelvic exam to be "intrusive." Pursuant to an order entered on January 27, 2009, the trial court granted the motion for the examination requested by Jason Wilson,[7] observing that "the victim is fifteen (15) years of age and females of that age customarily have pelvic examinations." Due to confusion over the selection of the examining physician and identification of which party was responsible for the examination costs, the examination was not performed.[8] After these issues were addressed to the trial court, a second order was entered on February 3, 2009, which directed that Dr. Jamette Huffman perform the subject physical examination and required the State to pay for the exam. Through this petition for a writ of prohibition, the State seeks to prevent the occurrence of the pelvic examination of J.W. that the trial court directed through its orders of January 27 and February 3, 2009.

## II. Standard of Review

■ When this court is asked to determine whether a trial court has exceeded its authority, our review is conducted based upon the standard, now axiomatic, that we initially set forth in syllabus point four of *State ex rel.*

---

5. The stated purpose of the examination is to determine if there is any evidence that Petitioner's hymen has been disturbed. Based on the alleged traumatic nature of the assaults, Jason Wilson contends that forensic evidence of the abuse should exist if those assaults took place. The State counters that it is prepared to put on evidence, should it be necessary, to account for the absence of evidence of a disturbed hymen.

6. According to Jason Wilson, Ms. Hasty is a registered play therapist "who has been a member of the State's prosecution team for sexual molestation cases in Mercer County for some time."

7. The order entered on January 27, 2009, wrongly indicated that the trial court was granting the State's motion for the physical examination. In the subsequent order entered on February 3, 2009, this error was corrected to accurately reflect that the Defendant, rather than the State, had sought the examination.

8. In its order of January 27, 2009, the trial court directed that the examination be performed with "due speed" because of the February 3, 2009, trial date.

*Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Id.* at 14–15, 483 S.E.2d at 14–15. Pursuant to these well-established factors, we proceed to consider whether the trial court overstepped its authority by issuing the orders that require J.W. to undergo a limited pelvic examination.

### III. Discussion

In syllabus point three of *State v. Delaney,* 187 W.Va. 212, 417 S.E.2d 903 (1992), we announced the standard by which a trial court is required to evaluate a party's request for either a physical or a psychological examination. Recognizing that a party's stated need for such an examination must be balanced against the risk that the examination may cause either physical or psychological harm to the victim, we adopted the following test to aid trial courts when ruling on this type of motion:

> In order for a trial court to determine whether to grant a party's request for additional physical or psychological examinations, the requesting party must present the judge with evidence that he has a compelling need or reason for the additional examinations. In making the determination, the judge should consider: (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

*Delaney,* 187 W.Va. at 213, 417 S.E.2d at 904, syl. pt. 3.

Challenging the application of the six-factor test we adopted in *Delaney,* the State argues that the gynecological examination ordered by the trial court "is intrusive and would be humiliating to anyone who has not experienced it." *See id.* As the State acknowledged, J.W. did not testify at the pretrial hearing with regard to her specific objections to the requested examination.[9] Additionally, the State posits that inconsistencies in the Petitioner's statements regarding the alleged acts of abuse should not bear on the trial court's consideration of the need for the subject examination.

Rejecting the Petitioner's contention that he failed to demonstrate the requisite "compelling need or reason" for the physical examination at issue, Jason Wilson reviewed the six factors included in the *Delaney* test and how they relate to the facts of this case. *See Delaney,* 187 W.Va. at 213, 417 S.E.2d at 904, syl. pt. 3, in part. With regard to factor one, the nature of the requested examination and its inherent intrusiveness, he explained that the gynecological examination would be performed by a female physician and would be a brief examination, intentionally limited

---

9. The State apparently asks this Court to take judicial notice of the fact that a gynecological examination "is intrusive and would be humiliat-

ing" based on Petitioner's age and the fact that she has not previously had such an examination.

in scope.[10] Seeking to dispel the State's argument that the examination is necessarily intrusive, Jason Wilson observes that not only does the State routinely require this type of examination in cases of alleged rape, but women in the general population regularly undergo more extensive gynecological examinations [11] for health purposes.

Factor two of *Delaney* requires a consideration of the victim's age. J.W. was fifteen at the time of the request for the physical examination. In this case, factor three, which requires consideration of the lasting physical and/or emotional effects of the examination is arguably also tied to the age of the victim.[12] Referencing clinical evidence regarding the emotional effects of this type of examination based on the subject's age, Jason Wilson argues that the gynecological examination · should not cause her "any long term effects." Acknowledging that J.W. might experience embarrassment as the result of being required to undergo the examination, he maintains that there is no reason to expect any long term psychological effects stemming from the examination.[13]

With regard to the fourth *Delaney* factor, which requires consideration of the probative value of the examination, Jason Wilson argues that this evidence is crucial to his defense.[14] Dependent upon the results of the examination, he intends to rely on such evidence to argue that the charges brought against him by the State are baseless.[15] While recognizing that he is taking a risk in requesting medical information that has the potential to inculpate rather than exculpate him, Jason Wilson seeks to gain access to physical evidence that will potentially assist in his defense.

The fifth *Delaney* factor looks to the remoteness in time of the examination with reference to the alleged criminal act. Because the charges at issue span the time period of February 2003 to May 2005, the examination at issue would be taking place four years after the last alleged act of sexual abuse. Due to his fairly large stature combined with the eight-year difference in their ages,[16] Jason Wilson contends that evidence of the alleged "forcible, traumatic penetrations" should remain despite this passage of time. The State represents that it is prepared to introduce evidence that after a period of only six months indicia of sexual trauma may no longer exist.[17] As to the final *Delaney* factor, which looks to the availability of evidence from other sources, Jason Wilson asserts that there is no other evidence that he can obtain to refute the charges against him.

Upon its consideration of these arguments addressing the six factors we set forth in *Delaney*, the trial court focused on both the age of the alleged victim and the fact that women of this age "customarily have pelvic examinations." While recognizing that a pelvic examination would be intrusive to a young child, the trial court reasoned that the age of J.W. combined with the fact that the State routinely utilizes evidence that it obtains by comparable means from a rape kit test suggested that the requested examination would not be "intrusive under the circumstances." The trial court further recognized that Jason Wilson was taking a gamble

10. *See supra* note 5.

11. In contrast to the type of examination that women customarily undergo as part of a routine annual gynecological examination, the physical examination at issue is not an in-depth cervical examination. *See supra* note 5.

12. It stands to reason that females who undergo gynecological examinations are likely to experience a decreased potential of emotional harm as they increase in age.

13. He makes this representation based upon his purported consultation with a local psychologist, Dr. David Clayman.

14. Counsel for Jason Wilson stressed that the evidence which he seeks to obtain from the gyne-

cological examination "is clearly the most compelling evidence that we could have to dispute" the charges asserted against his client.

15. *See supra* note 5.

16. The record suggests that J.W. would have been between the ages of nine and eleven at the time of the assaults alleged in the indictment, while Jason Wilson would have been between the ages of sixteen and eighteen.

17. Evidence to this effect was introduced by the State in *Delaney*. *See* 187 W.Va. at 216, 417 S.E.2d at 907.

that the evidence he was seeking to prove his innocence may in fact bolster the State's case.

Upon our careful review of the record in this case against the arguments of counsel, we find that the trial court considered and applied the six factors we adopted in *Delaney* in ruling that the physical examination requested by Jason Wilson was warranted under the facts of this particular case. Finding no basis for determining that the trial court committed error in ordering that Petitioner undergo a limited physical examination, the grounds for issuing a writ of prohibition have not been met. *See* Syl. Pt. 4, *Hoover v. Berger,* 199 W.Va. at 14–15, 483 S.E.2d at 14–15. Accordingly, we refuse to issue the requested writ of prohibition. The Clerk is directed to issue the mandate forthwith.

Writ denied.