**FILED**

**June 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia *ex rel.***
**Mountaineer Gas Company,**
**Defendant Below, Petitioner**

**vs.) No. 22-639** (Roane County 19-C-9)

**The Honorable R. Craig Tatterson,**
**Judge of the Circuit Court of Roane County,**
**West Virginia; the Estate of Cory Colton**
**Keith Carper; Christopher K. Carper and**
**Amanda J. Carper; Sandra K. Carper,**
**Individually and as Administratrix of the**
**Estate of Cory Colton Keith Carper;**
**Susan K. Foraker; and**
**Susan Armstead, Individually and with**
**Joshua D. Armstead, as Parents and Next**
**Friends of Elijah J. Armstead, a Minor,**
**Plaintiffs Below, Respondents**

**MEMORANDUM DECISION**

Petitioner, Mountaineer Gas Company ("MGC"), filed a petition for a writ of prohibition seeking to prevent the circuit court from enforcing its July 13, 2022 order denying MGC's motion for summary judgment. Respondents, the Estate of Cory Colton Keith Carper; Christopher K. Carper and Amanda J. Carper; Sandra K. Carper, individually and as administratrix of the Estate of Cory Colton Keith Carper; Susan K. Foraker; and Susan Armstead, individually and, with Joshua D. Armstead, as parents and next friends of Elijah J. Armstead, a minor (the "Plaintiffs"), filed a response.[1] MGC argues that the circuit court erred by determining that the Public Service Commission of West Virginia ("PSC") exceeded its statutory authority when it approved MGC's Rates, Rules, and Regulations for Natural Gas Service (eff. 2010) ("Tariff"). Along the same lines, MGC also argues that the circuit court erred by determining that the Tariff does not conform to the laws of this State and the rules, regulations, and orders of the PSC. For the reasons set forth below, we refuse MGC's petition for a writ of prohibition.

---

[1] MGC appears by counsel Eric R. Passeggio (*pro hac vice*) and Carrie Goodwin Fenwick. Respondents appear by counsel Chad Lovejoy, L. David Duffield, and Thomas P. Boggs. The Court would like to acknowledge the participation in this case of the Public Service Commission of West Virginia and Hope Gas, Inc., who filed amicus briefs in support of MGC's petition. We have considered the arguments presented by the amici curiae in deciding this case.

1

The Plaintiffs filed this case following a December 17, 2018 incident at the Carper residence in Looneyville, West Virginia. Christopher and Amanda Carper, their ten-year old son, Cory Carper, and their son's friend, Elijah Armstead, were overcome by carbon monoxide from the natural gas furnace in the Carpers' home. Carbon monoxide entered the dwelling area through an exploded seam in the furnace exhaust pipe. Elijah Armstead's mother, Susan Armstead, discovered the victims with Cory Carper's grandmother, Sandra Carper. Cory Carper's aunt, Susan Foraker, arrived later and observed the victims in distress. Unfortunately, Cory Carper succumbed to carbon monoxide poisoning. Though Amanda and Christopher Carper survived, they suffered injuries, as did Elijah Armstead.

The Carpers' natural gas came from a Core Appalachia pipeline transporting unprocessed natural gas from wells and gathering lines. MGC does not own or control this third-party pipeline. In fact, MGC does not serve as a distributor of natural gas in Looneyville. However, Core Appalachia allowed nearby residents to receive natural gas directly from its pipeline through "main line" taps. The Carpers received natural gas through such a main line tap. When unprocessed natural gas leaves the pipeline, it passes through MGC's meter assembly before it enters the Carpers' customer service piping. MGC's meter assembly includes a percolator tank, regulator, and meter that MGC owns, services, and maintains. The percolator tank uses ethylene glycol to remove water vapor from the natural gas before it enters the regulator and the meter.

The Carpers' furnace was installed by a licensed HVAC technician and included two flame rollout switches designed to shut off the furnace if it operates unsafely. When the furnace was installed, the switches were located in their proper positions. However, some time before the December 2018 carbon monoxide event, the rollout switches were detached and moved to a position above and away from the gas burners. It is unclear who moved the switches or when they were moved.

The Plaintiffs sued MGC for wrongful death and other injuries based on two primary theories of liability. First, the Plaintiffs asserted negligence-based claims resulting from MGC's alleged failure to properly inspect, service, and maintain the meter assembly. Second, the Plaintiffs alleged that the natural gas provided to the Carper home contained impurities that rendered it unmerchantable. According to the Plaintiffs' experts, MGC's negligent failure to maintain its equipment and the natural gas that it supplied to the Carpers caused an accumulation of "fouling" in the furnace that led to an explosive rupture of the exhaust pipe and an excess production of carbon monoxide.

After discovery, MGC filed a motion for summary judgment based on two theories. First, it contended that its alleged negligence was not the proximate cause of the incident because the rollout switches were intentionally disabled and, if working properly, would have shut down the furnace and prevented the accident, severing any causal chain linking MGC to the incident. Second, it argued that specific provisions in MGC's Tariff[2] filed with the PSC preclude claims

_____

[2] The relevant portions of the Tariff are as follows:

2.6 Mainline Consumers

Notwithstanding any provision to the contrary within these Rules and Regulations it is expressly understood that for Mainline

based on the quality of third-party gas, the condition of the Carpers' furnace, and the Plaintiffs' theories of liability that do not depend on negligence.[3]

The circuit court denied MGC's motion for summary judgment, finding that MGC's proximate causation argument invoked doctrines of concurrent negligence, comparative fault, and intervening causation and involved questions of material fact that must be resolved by a jury. The circuit court also denied MGC's claim that it was entitled to summary judgment based on the Tariff. According to the circuit court,

> [r]egardless of the source of the natural gas sold to the Plaintiffs, . . . [MGC] affirmatively undertook to actively participate in the process of gas distribution to the Plaintiffs by designing, installing, maintaining and servicing its gas equipment, which

Consumers the Company has no control over the quality and quantity of natural gas to be delivered to the Mainline Consumer by the third party pipeline and the Company makes absolutely no warranty, express or implied, that the natural gas will be of pipeline quality or suitable for use by the Mainline Consumer.

. . . .

3.1 Continuity of Service

The Company does not guarantee or undertake, beyond the exercise of due diligence and its duty as a utility, to furnish a sufficient supply of gas at all times and shall not be liable for failure to do so, beyond its available supply; nor shall it be liable for any injury to person or property from any cause arising inside the Customer's property line not the result of the negligence of the Company; nor shall it be liable for any injury to person or property arising from the use of gas by, or the supply of gas to, the Customer which is not the result of negligence on the part of the Company.

. . . .

3.3 Company's Liability

The Company will not be liable for damages to or injuries sustained by Customers or others, or by the equipment of Customer or others by reason of the condition or character of Customer's facilities and equipment of others on Customer's premises. The Company will not be responsible for the use, care or handling of the gas service delivered to Customer after same passes beyond the point of delivery.

---

[3] As the circuit court noted, the Plaintiffs' non-negligence theories included counts in the amended complaint based on "failure to warn (a strict product liability theory), breach of warranty, and breach of contract."

require its active management. Once choosing to do so, . . . [MGC] also has a common law duty to carry out its affirmative conduct with reasonable care. Plaintiffs have produced evidence, including expert testimony, that . . . [MGC] failed to properly carry out these affirmative duties—statutory, regulatory and common law—and that such failures were a cause of the incident. As such, it would violate both law and public policy to permit [MGC] to avoid liability for violations of those duties, if proven, by construction of the Tariff.

In this original jurisdiction proceeding, MGC asks us to issue a writ of prohibition directing the circuit court to apply the Tariff "to the undisputed facts in this case." We have noted that a writ of prohibition may issue when a circuit court refuses to grant summary judgment. *State ex rel. W. Va. Mut. Ins. Co. v. Salango*, 246 W. Va. 9, 13, 866 S.E.2d 74, 78 (2021). However, "[p]rohibition is an extraordinary remedy[,]" *Cent. W. Va. Reg'l Airport Auth. v. Canady*, 181 W. Va. 811, 813, 384 S.E.2d 852, 854 (1989) (per curiam), and "may not be used as a substitute for an appeal[,]" *State ex rel. W. Va. Nat. Auto Ins. Co. v. Bedell*, 223 W. Va. 222, 227, 672 S.E.2d 358, 363 (2008) (per curiam). Indeed, we have stated that "prohibition is a *drastic, tightly circumscribed*, remedy which should be invoked only in extraordinary situations." *Id.* at 228, 672 S.E.2d at 64 (emphasis added).

When a petitioner seeks a writ of prohibition and alleges that the circuit court exceeded its legitimate powers, we consider five factors:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.

Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). These are "general guidelines[,]" and "all five factors need not be satisfied[.]" *Id.* Nevertheless, we accord "substantial weight" to the third factor, which asks whether the circuit court's order "is clearly erroneous as a matter of law[.]" *Id.* Such errors must, however, be *clear*. We refuse to issue a writ of prohibition unless this relief is necessary to correct "*substantial, clear-cut* legal errors *plainly* in contravention of a *clear* statutory, constitutional, or common law mandate which may be resolved independently of *any* disputed facts[.]" *Salango*, 246 W. Va. at 13, 866 S.E.2d at 78 (emphasis added) (quoting *State ex rel. Frazier v. Hrko*, 203 W. Va. 652, 657, 510 S.E.2d 486, 491 (1998)).

As noted above, MGC objects to the circuit court's refusal to enforce provisions of the Tariff that may limit its exposure to liability. However, if this was error, MGC may "obtain the desired relief" on direct appeal. *Hoover*, 199 W. Va. at 15, 483 S.E.2d at 15, syl. pt. 4, in part. Under the facts of this case, "any error in the circuit court's denial of summary judgment is

4

unquestionably correctable in a direct appeal." *Cabell Cnty. Comm'n v. Whitt*, 242 W. Va. 382, 391, 836 S.E.2d 33, 42 (2019).

Likewise, MGC will not be "damaged or prejudiced in a way that is not correctable on appeal[.]" *Hoover*, 199 W. Va. at 15, 483 S.E.2d at 15, syl. pt. 4, in part. The circuit court found that material issues of fact remain regarding matters of concurrent negligence, comparative fault, and intervening causation. Thus, applying the Tariff would not spare MGC the trouble and expense of going to trial. In fact, it is not entirely clear how the circuit court (or this Court) could apply some of the liability limitations contained in the Tariff without findings of fact from a jury. Section 3.1 of the Tariff, for example, exempts MGC from liability for injury (a) that stems from a "cause arising inside the Customer's property line" and (b) that is "not the result of the negligence of" MGC. Likewise, Section 3.3 purports to exempt MGC from liability for injuries that result from "the condition or character of Customer's facilities[.]" Because the parties' experts disagree about the cause or causes of the carbon monoxide poisoning, the relevance of these Tariff provisions also appears to be an issue for jury determination. "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. Pt. 6, in part, *McAllister v. Weirton Hosp. Co.*, 173 W. Va. 75, 312 S.E.2d 738 (1983) (quoting Syl. Pt. 1, in part, *Ratlief v. Yokum*, 167 W. Va. 779, 280 S.E.2d 584 (1981)). Ultimately, MGC's capacity to seek effective relief on direct appeal remains intact.

As for the question of "whether the lower tribunal's order is clearly erroneous as a matter of law[,]" *Hoover*, 199 W. Va. at 15, 483 S.E.2d at 15, syl. pt. 4, in part, we note that "clearly erroneous" is a high standard. After reviewing the circuit court's order and considering the parties' arguments before this Court, we are not able to conclude at this stage of the proceedings that the circuit court's conclusions are clearly erroneous as a matter of law. This is not to say that we agree with the circuit court's conclusions of law regarding the lawfulness of the relevant Tariff provisions; we do not decide that question either way. It is merely to say that MGC's arguments in this matter have failed to persuade us that the circuit court's conclusions regarding the Tariff are "*substantial, clear-cut* legal errors *plainly* in contravention of a *clear* statutory, constitutional, or common law mandate which may be resolved independently of *any* disputed facts[.]" *Salango*, 246 W. Va. at 13, 866 S.E.2d at 78 (emphasis added) (quoting *Frazier*, 203 W. Va. at 657, 510 S.E.2d at 491).[4]

MGC maintains that "[a] plaintiff's allegations and the facts of a given incident dictate how a tariff applies, if at all." We agree, and, in the end, we believe that remaining issues of fact, particularly regarding the parties' competing theories of causation, render this matter

---

[4] Moreover, we do not believe that the circuit court "order is an oft repeated error or manifests persistent disregard for either procedural or substantive law[.]" *Hoover*, 199 W. Va. at 15, 483 S.E.2d at 15, syl. pt. 4, in part. We acknowledge that the circuit court order arguably raises "new and important problems or issues of law of first impression" to the extent that it rules on the lawfulness of liability limitations contained in the Tariff. *Id.* However, on balance, we believe MGC has failed to establish that an analysis of the *Hoover* factors entitles it to the requested extraordinary relief.

unsuitable for the extraordinary remedy of prohibition. In addition, MGC maintains an adequate means, through a direct appeal, to seek its desired relief. Therefore, we refuse MGC's petition for a writ of prohibition.

Writ refused.

**ISSUED:**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn