IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

**FILED**

September 17, 2015

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

No. 15-0131

STATE OF WEST VIRGINIA ex rel. LISA MILES,

Petitioner

v.

WEST VIRGINIA BOARD OF REGISTERED PROFESSIONAL NURSES,

Respondent

ORIGINAL PROCEEDING IN PROHIBITION

WRIT GRANTED

Submitted:  September 2, 2015
Filed:  September 17, 2015

Lisa L. Lilly, Esq.
Martin & Seibert, L. C.
Charleston, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Greg S. Foster, Esq.
Assistant Attorney General
Attorneys for Respondent

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "'The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction.' Syl., *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925)." Syl. Pt. 1, *State ex rel. Johnson v. Reed*, 219 W. Va. 289, 633 S.E.2d 234 (2006).

2. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

i

3. "In adjudicating a contested case concerning the revocation or suspension of a nurse's license to practice registered professional nursing, the West Virginia Board of Examiners for Registered Professional Nurses must follow the procedural requirements set forth in Chapter 30 of the *West Virginia Code,* as well as the contested case hearing procedure set forth in Title 19, Series 5, of the *West Virginia Code of State Rules.*" Syl. Pt. 2, *State ex rel. Fillinger v. Rhodes*, 230 W. Va. 560, 741 S.E.2d 118 (2013).

WORKMAN, Chief Justice:

Petitioner Lisa Miles (hereinafter "petitioner") seeks a writ of prohibition to prohibit respondent West Virginia Board of Registered Professional Nurses (hereinafter "the Board") from proceeding on a complaint against her license. Petitioner asserts that the Board's failure to resolve the complaint against her within one year from the date of an interim status report, pursuant to West Virginia Code § 30-1-5(c) (2005), divests it of jurisdiction to proceed on the complaint.

Based upon our review of the briefs, legal authorities, appendix record, and upon consideration of arguments of counsel, this Court finds that the Board has failed to comply with the statutory mandates of West Virginia Code § 30-1-5(c) and therefore further action on the complaint against petitioner's license is in excess of its jurisdiction. Accordingly, petitioner's request for relief in prohibition is granted.

## I.    FACTS AND PROCEDURAL HISTORY

Petitioner received her nursing degree in 2010; she worked as a registered nurse in the emergency room at St. Joseph's Hospital (now known as Camden-Clark Hospital; hereinafter "Camden-Clark") in Parkersburg from June 2010 until April 2, 2013, when she was terminated for allegedly violating the hospital's narcotic waste

1

policies.[1]  An audit of her medical records demonstrated that on eleven occasions she pulled the narcotic Dilaudid without a physician's order, on three occasions pulled Dilaudid for patients who had already been discharged from the emergency room where she was working, and on nine occasions entered orders for Dilaudid on behalf of a physician.  In these instances, Camden-Clark asserts that petitioner did not properly chart that the medication had either been "not given" to the patient or "wasted," as required by Camden-Clark's policies.  Petitioner contends that she did not divert the medication, but rather, the errors were occasioned by her lack of sufficient training on the electronic medication dispensation software she was required to use.[2]

Petitioner self-reported her termination to the Board, which then issued a Notice of Complaint on April 2, 2013.  On August 14, 2013, a little over four months after the complaint, the Board issued a status report to Camden-Clark via regular mail which stated simply that the matter was "under continued investigation and review by the Board staff."  The Board provides no explanation for why the status report was not sent via certified mail, but Camden-Clark indicated in an email contained in the appendix

---

[1] Petitioner now works at Jackson General Hospital where she began working in August 2013, four months after being terminated from Camden-Clark.  She has had no other complaints against her license.

[2] Petitioner claims that she was poorly trained on the software and that she was trained on "floor nursing" as opposed to "emergency room nursing."  She claims that hard copies of the software manuals were unavailable and the online instructions were insufficient.  She claims that one to two weeks before she was terminated she requested additional training.  She allegedly offered to take a drug test upon being discharged, which was declined by Camden-Clark.

2

record that it did receive the letter nonetheless. The Board sent another status report on March 25, 2014, indicating the case was "currently being negotiated for settlement"; the Board sent petitioner a proposed consent decree days earlier. Camden-Clark has no record of receiving this letter.

On October 10, 2014—one year and two months after the status report—the Board sent a letter to Camden-Clark, addressed internally to "complainant" with no mailing address, quoting West Virginia Code § 30-1-5(c) and stating

> [*a*]*s you know the Board has exceeded its time allotments provided in law to resolve the complaint you filed.* While the Board strives to resolve all complaints within the required time limits, there are some that out of necessity need a longer period of time. What this law doesn't consider are the available resources to a government agency, the cooperation of the licensee and his or her attorney in attempting to resolve a complaint and other issues that affect the timeline this law requires.
>
> Pursuant to this law, you as the complainant, and the Board have to agree to extend the time frame. By this letter the Board is informing you of the necessity to extend the time frame to continue pursuing the complaint against the licensee. *If you disagree with this extension, please inform the Board in writing.* This case is being set for hearing.

(emphasis added). Camden-Clark indicates in emails contained in the appendix record that this letter was received. Inexplicably, the Board sent the same letter again on December 11, 2014, addressed to Susan Abdella at Camden-Clark, but concluded the letter by stating that the case "is scheduled for Hearing." A Notice of Hearing was issued the next day setting a hearing for January 20, 2015.

3

On January 7, 2015, the Assistant Attorney General assigned to the case emailed Camden-Clark asking to interview witnesses and ostensibly requesting additional documents. On January 15, 2015—five days before the scheduled hearing—the Assistant Attorney General contacted petitioner's counsel; as a result of this contact, petitioner's counsel requested the Board's complete file on the matter and witness information. On that date, the Assistant Attorney General emailed the Board's file, the electronic medication dispensation software training manual, and a Board of Pharmacy report to petitioner's counsel; he received the training manual, Board of Pharmacy report, and full audit containing spreadsheets only days earlier from Camden-Clark. The Board concedes that these materials contained 152 new pages of documents, but argues that it had only just been received from Camden-Clark.[3] All of these documents were identified as exhibits upon which the Board intended to rely at the hearing.

Upon motion of petitioner, the January 20, 2015, hearing was continued until February 19, 2015; this petition for a writ of prohibition was filed shortly before the February hearing was scheduled to occur.

---

[3] The appendix record reveals that petitioner's counsel was given an opportunity to review the Board's administrative file early on in this matter and provided copies of its contents. However, as a result of the Assistant Attorney General's more recent request for additional documentation from Camden-Clark, the Board was in possession of additional materials not originally contained in the file.

## II.    STANDARD OF REVIEW

It is well-established that "'[t]he writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction.' Syl., *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925)." Syl. Pt. 1, *State ex rel. Johnson v. Reed*, 219 W. Va. 289, 633 S.E.2d 234 (2006). Moreover, prohibition will also lie where the lower tribunal is alleged to be acting in excess of its "legitimate powers." Specifically,

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With these standards in mind, we proceed to the parties' arguments.

5

# III. DISCUSSION

West Virginia Code § 30-1-1 *et seq.* contains general provisions applicable to State Boards of Examination or Registration regulating designated professions and occupations. In particular, West Virginia Code § 30-1-5(c) provides that

> [e]very board referred to in this chapter has a duty to investigate and resolve complaints which it receives and *shall*, within six months of the complaint being filed, send a status report to the party filing the complaint by certified mail with a signed return receipt and *within one year of the status report's return receipt date issue a final ruling*, unless the party filing the complaint and the board agree in writing to extend the time for the final ruling.

(emphasis added). The primary issue presented herein is twofold: 1) whether the statutory requirements contained in West Virginia Code § 30-1-5(c) are mandatory and jurisdictional or merely directory; and 2) if mandatory, whether the Board complied with these mandates.

We note at the outset that this Court strictly applied the requirements of West Virginia Code § 30-1-1 *et seq.* against this professional Board in *State ex rel. Fillinger v. Rhodes*, 230 W. Va. 560, 741 S.E.2d 118 (2013) wherein we recently held:

> In adjudicating a contested case concerning the revocation or suspension of a nurse's license to practice registered professional nursing, the West Virginia Board of Examiners for Registered Professional Nurses *must follow the procedural requirements set forth in Chapter 30 of the West Virginia Code . . . .*

Syl. Pt. 2, in part, *id.* (emphasis added). Without *expressly* speaking to the issue of whether the time limitations were mandatory and jurisdictional, the Court ruled that the

6

Board's failure to resolve the complaint against Fillinger within the time requirements contained in the statute necessitated dismissal of the complaint. The Court noted that with respect to the time requirements contained in the statute, "[t]his Court has no reason to conclude that the Legislature meant less than what it said in *W. Va. Code*, 30-1-5(c) [2005], about those requirements[.]" *Id.* at 567, 741 S.E.2d at 125. Soon thereafter, the Court reiterated this sentiment with respect to disciplinary proceedings before the Real Estate Appraiser Licensing Board which were not resolved in accordance with the time requirements of West Virginia Code § 30-1-5(c). *See State ex rel. York v. W. Va. Real Estate Appraiser Licensing and Certification Bd.*, ___ W. Va. ___, 760 S.E.2d 856, 862 (2014) ("The Board's actions are in excess of its jurisdiction, in that the complaints have not been handled in a timely fashion, as required [by] W. Va. Code 30-1-5(c)[.]").

This Court has stated that "[t]here is no universal rule by which directory provisions may be distinguished from those which are mandatory" and that it must be determined "from the intention of the Legislature." *Thomas v. McDermitt*, 232 W. Va. 159, 169, 751 S.E.2d 264, 274 (2013) (quoting *State ex rel. Board of Education v. Melton*, 157 W.Va. 154, 165, 198 S.E.2d 130, 136 (1973)). In that regard, the legislative history of West Virginia Code § 30-1-5(c) reveals that the 1996 version of this statute contained no specific deadlines for resolution. Rather, the statute provided merely that "[e]very board referred to in this chapter has a duty to investigate and resolve complaints which it receives and shall do so in a timely manner." W. Va. Code § 30-1-5(b) (1996). However, Senate Bill 737 was introduced in 2005 for the express purpose of

7

"establishing a time limit for licensing boards to issue a final ruling on complaints." *See* Senate Bill No. 737, "Introduced Version," March 23, 2005. Notably the original version of the introduced Bill required that a final ruling be issued "within one year of the complaint being filed[.]" *Id.* The final version, codified as amended at West Virginia Code § 30-1-5(c), inserted the requirement of an interim status report, sent via certified mail and return receipt requested, from which the one year to resolve was to be calculated.

Turning now to the parties' arguments, petitioner argues that the requirements in West Virginia Code § 30-1-5(c)—including the requirements that status reports be issued certified mail, return receipt requested, that complaints be resolved within one year of the status report, and that agreements to extend these timelines must be in writing—are mandatory and jurisdictional, relying heavily on Syllabus Point 2 of *Fillinger*. Petitioner argues specifically that the Board admits it did not issue the status reports certified mail and more importantly, that it is undisputed that the Board neither resolved the matter within one year of the status report, nor obtained an "agreement in writing" to extend that deadline.

The Board, on the other hand, argues that the statute contemplates an *overall* eighteen month period in which these complaints may be resolved, *i.e.* six months to issue a status report and another twelve months thereafter to resolve. The Board further argues that, although it did not resolve this matter in eighteen months, it obtained

8

an "agreement in writing" to extend this time period. It contends that the October 10, 2014 and December 11, 2014, letters telling complainant to notify it in writing if it disagrees with an extension "forms the basis" of an agreement in writing.

Moreover, the *Fillinger* and *York* cases notwithstanding, the Board argues that the statutory requirements are merely directory and do not go to the "essence" of what was intended by the Legislature—that the complainant be kept apprised of status and that the parties be permitted to extend the statutory deadline for resolution. Specifically, the Board concedes that while this Court has issued cases indicating that use of the term "shall" makes a statutory requirement mandatory, Syl. Pt. 1, *Nelson v. W. Va. Public Employees Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982), it has also stated that use of the word "is not conclusive in determining whether they are mandatory or directory." *Canyon Public Serv. Dist. v. Tasa Coal Co.*, 156 W. Va. 606, 611, 195 S.E.2d 647, 651 (1973). The Board notes that the Court has endorsed the rule that whether a statute is mandatory or directory is dependent upon "whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form." *Thomas,* 232 W. Va. at 169, 751 S.E.2d at 274 (quoting *State ex rel. Kennedy v. Boles*, 150 W.Va. 504, 511-12, 147 S.E.2d 391, 396 (1966)). In that regard, the Board argues that the requirements of West Virginia Code § 30-1-5(c) are "matter[s] of convenience rather than substance" and that "the purpose of the legislature . . . can be accomplished in a manner other than that prescribed with substantially the same results." *Id*. at 512, 147 S.E.2d at 396.

9

We disagree with the Board's contention that the time-based requirements of West Virginia Code § 30-1-5(c) are matters of mere "convenience" or "form." This determination is borne out by the fairly explicit legislative history seeking to establish specific time requirements for resolution of such complaints. These requirements are unquestionably mandatory and therefore, jurisdictional, as pertains to these types of proceedings. Moreover, the Board's contention that the statute provides an overall eighteen-month timeframe for resolution is wholly without merit; quite simply, this is not what the statute provides. The plain language of the statute requires the issuance of an interim status report within six months, from which date the Board has one year to resolve the complaint unless an extension is obtained as prescribed. As we previously stated *Fillinger*, we have no reason to believe the Legislature "meant less than what it said" regarding these requirements. *Id.* at 567, 741 S.E.2d at 125.

Moreover, this Court did not mean less than what it said in Syllabus Point 2 of *Fillinger*: this Board *must* follow the procedural requirements of West Virginia Code § 30-1-5(c). Based upon the date of the status report and pursuant to statute, the Board had until August 14, 2014,[4] to issue a final ruling unless an extension was obtained from Camden-Clark in writing. It unquestionably failed in both regards. Not only did the Board not resolve the matter by August 14, but it did not even acknowledge the need for

---

[4] Given that there was no return receipt—likewise in violation of the statutory requirements—the only date available for this calculation is the date of the status report itself.

an extension until after that deadline had passed. When it did so, rather than obtaining an agreement to extend with the complainant in writing, the Board simply told the complainant an extension was needed and presumed to have its agreement absent an objection in writing. Under any rational construction, the Board's letters regarding an extension merely offered a *proposal* to extend the deadline in writing and then attempted to shift the statutory duty solely onto Camden-Clark to provide written *disagreement* with an extension. This presumptuous approach created a complete nullification of the statutory requirements. Were the statute's requirements so easily evaded, there would have been little reason for the Legislature to alter the language of the statute to provide for specific acts and deadlines.

We conclude that the Board in this instance has exceeded its jurisdiction by failing, *almost entirely*, to comply with the statute governing its procedural handling of complaints. Not only did the Board fail to comply with the statute, but it failed, inexplicably, to take heed of this Court's holding in *Fillinger* which was directed explicitly to this Board. The Board's refusal to strictly comply with the very straightforward requirements in the statute seems to evidence a blatant disregard for both the Legislature's and this Court's explicit instructions on how these matters should be handled, at worst, or a pattern of lackadaisical pursuit of complaints by this Board, at

11

best.[5] Either way, we are dismayed to note that in addition to divesting it of jurisdiction, the Board's actions in this case present the seldom-seen "persistent disregard for either procedural or substantive law" likewise warranting a writ of prohibition. Syl. Pt. 4, in part, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.

Finally, this Court would be remiss if we did not remind the Board of the gravity of its responsibilities to the public in light of its ostensible belief that the requirements of the statute are impracticable[6] and therefore it need not comply with them or the mandate of this Court. West Virginia Code § 30-1-1a plainly states that "the fundamental purpose of licensure and registration [of professionals] is to protect the public[.]" As well-stated by Justice Loughry, who in his concurrence in *Fillinger* specifically urged the Board to take measures to ensure its inaction was not repeated:

> [i]t is the responsibility of the Board to act diligently and promptly in reviewing, investigating, and conducting

---

[5] Petitioner makes two additional arguments regarding the Board's delay in providing her with investigative documents until five days before the hearing and the applicability of Rule 41 of the West Virginia Rules of Civil Procedure. As a result of our disposition of this matter, we need not address these arguments.

[6] As noted above, the Board's apparent "form" letter requesting an extension from complainants, bemoans the fact that the time requirements of West Virginia Code § 30-1-5(c) "doesn't consider" certain practical difficulties which may arise during the course of a complaint investigation and resolution. We note first that at no time during these proceedings did the Board offer any explanation as to why the complaint against petitioner could not be resolved within the statutory time frame. Secondly, the expediencies identified in this form letter are not unusual and are undoubtedly the reason the Legislature provided a simple method of extending the resolution period. More importantly, these matters are better addressed to the Legislature than used to coax a complainant into extending the resolution period.

12

> disciplinary hearings on complaints brought before it not only to guarantee that nurses will be held accountable for proven misconduct, but most importantly, to ensure the safety of patients and the public. Such expeditious action by the Board also assures hardworking, diligent, and caring nurses that they are working alongside other nurses who are competent and fit to hold a nursing license in this State. This results in protecting the public while also preserving the integrity of the nursing profession.

*Fillinger*, 230 W. Va. at 568, 741 S.E.2d at 126 (Loughry, J., concurring). Clearly, the Legislature has determined that professionals are entitled to resolution of the cloud over their license within a specific time frame. More critically, the Legislature has determined that the public should not be interminably exposed to professionals who potentially present a risk of harm to their patients, clients or the public at large.

## IV. CONCLUSION

Accordingly, we find that the Board lacks jurisdiction to pursue further action on the complaint against petitioner and that therefore the complaint against petitioner must be dismissed.

Writ Granted.

13