No. 23-431 – *State of West Virginia ex rel. Jose Ravelo, DDS v. West Virginia Board of Dentistry*

**FILED**

**May 24, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Wooton, Justice, with whom Judge Howard joins, dissenting:

I respectfully dissent from the Court's denial of Jose Ravelo, DDS's ("Dr. Ravelo") petition for a writ of prohibition to halt proceedings against him instituted by the West Virginia Board of Dentistry ("the Board"). In my view, the Board's purposeful delay in bringing this matter to a conclusion, a delay resulting in the proverbial sword of Damocles hanging over Dr. Ravelo for three years rather than the eighteen-month period set forth in the relevant statutes, denied him due process of law. Because the Board's delay clearly violated the relevant statutory framework for disciplinary proceedings against a dental professional, and further because the resultant damage and prejudice to Dr. Ravelo is not correctible on appeal, extraordinary relief is appropriate. *See* Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) (setting forth five factors to examine in determining whether extraordinary relief issuing a writ of prohibition is appropriate).

This Court has long held that

> a license to practice a recognized profession is a valuable property right. *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953). Limitations on the enjoyment of that property right, coupled with a public reprimand and fine, imposed by a disciplinary body as in this case, clearly prejudice substantial

1

rights of the holder of that property right and justify careful scrutiny by reviewing courts of the proceedings resulting in such action.

*Modi v. W. Va. Bd. of Med.*, 195 W. Va. 230, 242, 465 S.E.2d 230, 242 (1995); *see also Iyer v. W. Va. Bd. of Med.*, No. 17-0279, 2018 WL 2175546, at \*4 (W. Va. May 11, 2018) (memorandum decision) ("It is well settled that a 'physician has an interest in his or her medical license which is a valuable right that may not be revoked without some form of due process being accorded to the physician.'") (citation omitted)). In order to protect these rights, the Legislature has established strict time limits governing the investigation and prosecution of complaints against licensed professionals, including dental professionals. *See* W. Va. Code § 30-1-5(c),[1] -4-19[2] (2023). As we have noted, these strict time limits protect multiple interests:

Clearly, the Legislature has determined that professionals are entitled to resolution of the cloud over their license within a specific time frame. More critically, the Legislature has

---

[1] West Virginia Code section 30-1-5(c) provides, in relevant part, that

[e]very board referred to in this chapter shall investigate and resolve complaints which it receives and shall, within six months of the complaint being filed, send a status report to the party filing the complaint and the Respondent by certified mail with a signed return receipt and within one year of the status report's return receipt date issue a final ruling, unless the party filing the complaint and the board agree in writing to extend the time for the final ruling.

[2] West Virginia Code section 30-4-19(a) provides, in relevant part, that "[t]he board may initiate a complaint . . . upon receipt of credible information and shall, upon the receipt of a written complaint of any person, cause an investigation to be made to determine whether grounds exist for disciplinary action[.]"

> determined that the public should not be interminably exposed to professionals who potentially present a risk of harm to their patients, clients or the public at large.

*State ex rel. O.H. v. W. Va. Bd. of Med.*, 238 W. Va. 139, 145, 792 S.E.2d 638, 644 (2016).

Broadly speaking, the statutory framework gives the relevant licensing board eighteen months in which to investigate, prosecute, and resolve a complaint, assuming the timely issuance of a status report and absent an agreed-upon extension of time. *See* text *infra*. Significantly, this time frame is jurisdictional. *See State ex rel. Miles v. W. Va. Bd. of Registered Pro. Nurses*, 236 W. Va. 100, 105, 777 S.E.2d 669, 674 (2015) ("We disagree with the Board's contention that the time-based requirements of West Virginia Code § 30-1-5(c) are matters of mere 'convenience' or 'form.' This determination is borne out by the fairly explicit legislative history seeking to establish specific time requirements for resolution of such complaints. These requirements are unquestionably mandatory and therefore, jurisdictional, as pertains to these types of proceedings.").

In the instant case, the Board has attempted to enlarge the time in which it must resolve the complaint against Dr. Ravelo by giving itself an extra five months on the front end of the case and then an extra year on the back end. The delay at the front end of the case is unauthorized under the relevant statutes, and the Board's justifications for its actions, as discussed *infra*, are wholly unconvincing. The delay at the back end of the case, even if authorized – which is, at best, debatable – violated Dr. Ravelo's constitutional rights under the facts and circumstances of this case. I address these issues in turn.

First, there are only two ways in which a licensing board's investigation into the conduct of a licensed professional may begin. As fully set forth *supra* in note 1, West Virginia Code section 30-1-5(c) provides, in relevant part, that "[e]very board referred to in this chapter shall investigate and resolve *complaints which it receives* and shall, within six months of the complaint being filed, send a status report to the party filing the complaint and the Respondent[.]" (Emphasis added). Where no complaint has been received by the Board, it may choose a second option: to "*initiate a complaint . . .* upon receipt of credible information and . . . cause an investigation to be made to determine whether grounds exist for disciplinary action under this article or the legislative rules promulgated pursuant to this article." *Id.* § 30-4-19(a) (emphasis added). Thus, on September 9, 2021, when Dr. Ravelo self-reported the complications which his patient had experienced, the Board could have done one of two things: it could have treated the self-report as a complaint and proceeded with an investigation, or it could have initiated its own complaint and then proceeded with an investigation. Whichever option the Board chose, the statutory clock would have started to run on September 9, 2021; the status report would then have been due on or about March 9, 2022; and the Board's final order resolving the case would have been due on or about March 9, 2023, absent an agreed-upon extension of time. *See* W. Va. Code § 30-1-5(c).

But the Board chose neither of these options; instead, it placed the cart before the horse by initiating an investigation in the absence of a complaint, thereby avoiding the strict statutory timeframes. Thereafter, its investigation was concluded on or about

4

February 14, 2023, at which time it informed Dr. Ravelo that it was opening a complaint against him. By proceeding in this fashion, the Board awarded itself an extra five months in which to proceed to final resolution, because the status report was now due on or about August 14, 2023, rather than on or about March 9, 2023.

The Board justifies its action in launching an investigation in the absence of any complaint, either received from a third party or initiated sua sponte, in two ways. First, it argues that Dr. Ravelo's self-report could not be considered a complaint because Dr. Ravelo was simply reporting the existence of a medical complication that arose after a surgery, while denying that his care of the patient fell below the applicable standard of care. I agree with the Board that the self-report was not a complaint and could not reasonably have been treated as a complaint, because to find otherwise would suggest that the mere existence of a complication is prima facie evidence of malpractice warranting professional discipline and/or civil liability, a proposition that no one would endorse.

The Board goes a step too far, however, in asserting that it could not have initiated a complaint upon receipt of Dr. Ravelo's self-report because West Virginia Code section 30-4-19(a) permits it to do so only on receipt of "credible information," and the Board could not determine whether the self-report was "credible" until after it conducted an investigation into the case. I find this argument to be both logically and legally preposterous. Is the Board seriously suggesting that a dentist's self-report of a complication, submitted by counsel, doesn't pass a threshold credibility test simply because

5

the dentist denies negligence on his part? In this regard, the Board appears to be confusing what is necessary to initiate a complaint against a dentist, thus authorizing an investigation, with what is necessary to establish probable cause to charge the dentist with a violation of the standard of care in treating his or her patient. The fact that the dentist's self-report doesn't establish probable cause for a *charge* does not mean that the self-report isn't credible information upon which to base the initiation of a *complaint*.[3] Additionally, the very fact that Dr. Ravelo's self-report was not timely submitted, *see* W. Va. Code § 30-19(g)(18),[4] was a sufficient basis in and of itself for the Board to initiate a complaint without further delay.

Simply put, the statute does not authorize the Board to conduct an investigation in the absence of a complaint, whether received from a third party or initiated by the Board, but that is exactly what happened here. Notwithstanding the majority's after-

---

[3] It is telling that the majority attempts to bolster its acceptance of the Board's weak justifications for violating the straightforward requirements of West Virginia Code section 30-4-19(a) by suggesting that Dr. Ravelo's counsel waived his right to contest this issue by stating, in the self-report letter, that "Dr. Ravelo's intention is to assist and cooperate with the Board's investigation into this incident in any way that he can, and he pledges complete transparency in doing so." I cannot agree with the majority's bland assertion that Dr. Ravelo thus "identified the proper next step following the Board's receipt of his self-report: an investigation."

[4] West Virginia Code § 30-19-provides that a dentist may be subject to professional discipline for "[f]ailing to report to the board within 72 hours of becoming aware of any life threatening occurrence, serious injury, or death of a patient resulting from the licensee's or permittee's dental treatment[.] In this case, the surgery under review was performed on August 19, 2021, and Dr. Ravelo's self-report to the Board was dated September 7, 2021 – 19 days later.

the-fact attempt to construe clear statutory language in such a way as to provide an escape hatch for non-compliance, the statute says what it says: the Board can only act on a complaint, not on a hunch or a suspicion or an educated guess. However, this error, standing alone, would probably not justify this Court's grant of extraordinary relief pursuant to the well-established factors first enunciated in *State ex rel. Hoover v. Berger,* 199 W. Va. 12, 483 S.E.2d 12 (1997).[5] But the error does not stand alone: having given itself an unauthorized five-month period at the front end, the Board then slow-walked the

---

[5] *Hoover* provides that

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Id*. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4.

proceedings right up to the cusp of the statutory deadline for resolving the case, at which point it asked itself for, and then granted itself, a one-year extension of time.

A review of the following facts demonstrates beyond argument that the Board was dilatory in getting this matter resolved.

On September 7, 2021, Dr. Ravelo informed the Board, through a letter by counsel, that his patient had experienced complications resulting in his hospitalization.

On October 15, 2021, the Board subpoenaed the patient's hospital records.

On or about February 14, 2022, the Board informed Dr. Ravelo that it was opening a complaint, alleging that (a) he should have consulted the patient's physician about whether or not to keep him on Plavix before the surgery, and (b) he nicked an artery during the surgery. Dr. Ravelo was given thirty days to respond.

On March 15, 2022, Dr. Ravelo filed a timely response, denying that he violated any standards of care.

On April 11, 2022, Dr. Ravelo submitted a report from an expert, a board-certified oral surgeon, opining that he did not violate any standards of care.

8

On July 12, 2022, the Board subpoenaed the patient's CT scans, which Dr. Ravelo submitted three days later.

On July 26, 2022, the Board issued a status report,[6] which simply stated that the Board was still reviewing and considering the matter.

In August, 2022, the Board received an expert report from a physician who opined that Dr. Ravelo had violated the standard of care in his treatment of the patient.

On October 21, 2022, the Board found that probable cause existed to support charging Dr. Ravelo with a violation of the standard of care.

On November 25, 2022, the Board received a complaint against Dr. Ravelo in a wholly unrelated matter: the mother of a juvenile patient complained that Dr. Ravelo had "yelled at" the juvenile, who was apparently afraid of needles, and extracted only one tooth when he was supposed to extract six. According to its brief (the record being silent on this matter), because of the complaint involving the juvenile the Board decided not to

---

[6] Dr. Ravelo assigns as error the Board's submission of this status report, which can at best be described as remarkably uninformative. I agree with the majority that it is not for this Court to establish, in the absence of any statutory guidance, a test to determine what does or does not constitute a "real" status report.

9

offer a consent decree to Dr. Ravelo in the instant case, and to essentially stay the matter while awaiting the results of its investigation into the unrelated complaint.

On May 15, 2023, after six months of silence and inaction on the Board's part, Dr. Ravelo served a Freedom of Information Act ("FOIA")[7] request for documents related to him and others in his practice, which according to the Board required "extensive review and redaction to ensure . . . privacy.]"[8]

On June 16, July 5, July 18, and July 28, 2023, the Board produced the documents, as well as the patient's hospital records that it had received in or about October,

---

[7] *See* W. Va. Code §§ 29B-1-1 to -7 (2023).

[8] I reject the Board's suggestion that Dr. Ravelo's FOIA request is to blame for the delay in timely resolving this case. West Virginia Code section 30-1-5 provides, in relevant part, that

> [t]he time period for final ruling shall be tolled for any delay requested or caused by the respondent or by counsel for the respondent and in no event shall a complaint proceeding be dismissed for exceeding the time standards in this section when such overage is the result of procedural delay or obstructive action by the accused or his or her counsel or agents.

I cannot accept the proposition – which is implicit in the Board's complaint about the necessity of "extensive review and redaction" of documents – that Dr. Ravelo's request for relevant discovery materials falls within the statutory rubric of "procedural delay or obstructive action" on his part. By the time the FOIA request was filed, twenty months had already elapsed since Dr. Ravelo's self-report, and there is nothing in the appendix record to suggest that the FOIA requests were extensive or that "review and redaction" of documents was so time-consuming for the Board's staff as to hold up the proceedings.

2021, almost two years earlier, and the report of its expert that it had received in August, 2022, almost a year earlier.

On June 28, 2023, the Board asked itself for an additional twelve months to "complete its investigation and issue a final ruling on . . . [its] complaint," which it then, unsurprisingly, agreed to, thus extending the statutory eighteen-month time frame to thirty-three months.

Dr. Ravelo argues that the delay in this case, as detailed above, violated his right to due process of law. After giving this matter the "careful scrutiny" required where an impingement on property rights is at issue, I agree. *See Modi*, 195 W. Va. at 242, 465 S.E.2d at 242; *see also* Syl. Pt. 4, *Frazier v. Derechin*, 246 W. Va. 36, 866 S.E.2d 101 (2021) ("'"A driver's license is a property interest and such interest is entitled to protection under the Due Process Clause of the West Virginia Constitution." Syl. Pt. 1, *Abshire v. Cline*, 193 W. Va. 180, 455 S.E.2d 549 (1995).' Syllabus Point 2, *Straub v. Reed*, 239 W. Va. 844, 806 S.E.2d 768 (2017)."). In an analogous context, this Court has held that in examining whether a "delay was unreasonable or excessive under the circumstances . . . any prejudice to the licensee shall be a factor considered in making [such a] determination[.]" *Warner v. Reed*, No. 15-0229, 2016 WL 870614, at *4 (W. Va. Mar. 7, 2016) (memorandum decision) (citing Syl. Pt. 4, *Holland v. Miller,* 230 W.Va. 35, 736 S.E.2d 35 (2012)). In this case, all of the delay has been attributable to the Board, not to Dr. Ravelo, despite the Board's attempt to characterize a routine FOIA request as some

11

sort of "procedural delay or obstructive action." *See supra* note 8. Further, the Board's action in asking itself for, and then granting itself, a full twelve-month extension of time – with Dr. Ravelo having no opportunity to object – smacks of unfairness. Finally, it cannot be gainsaid that the unwarranted delay in this case has caused prejudice; having the aforementioned sword of Damocles hanging over him for more than three years has caused Dr. Ravelo severe emotional distress, and he informs us that his expansion plans have been cast into limbo as he waits for a decision that will affect his professional future.

This is precisely the type of outcome that the Legislature sought to avoid when it set strict time limits on the investigation and prosecution of licensed professionals for alleged violations of the standard of care. In my view, those time limits should be enforced, not winked at.

For all of these reasons, I respectfully dissent. I am authorized to state that Judge Howard joins me in this dissenting opinion.