IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 23-431

_____

FILED

**May 24, 2024**

released at 3:00 p.m.
C. CASEY FORBES
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. JOSE RAVELO, DDS
Petitioner,

v.

WEST VIRGINIA BOARD OF DENTISTRY,
Respondent.

_____

PETITION FOR WRIT OF PROHIBITION

WRIT DENIED

_____

Submitted:  February 7, 2024
Filed:  May 24, 2024

Edward C. Martin, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia

Justin C. Withrow, Esq.
Paul M. Flannery, Esq.
Flannery Georgalis LLC
Cleveland, Ohio
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Joanne M. Vella, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WALKER, deeming herself disqualified, did not participate in the decision of this case

JUDGE GREGORY L. HOWARD, JR. sitting by temporary assignment.

JUSTICE BUNN concurs and reserves the right to file a concurring opinion.

JUSTICE WOOTON dissents and reserves the right to file a separate opinion.

JUDGE HOWARD dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1. "'The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction.' Syl., *State ex rel. Vineyard v. O'Brien*, 100 W. Va. 163, 130 S.E. 111 (1925)." Syl. Pt. 1, *State ex rel. Johnson v. Reed*, 219 W. Va. 289, 633 S.E.2d 234 (2006).

2. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

i

3.     "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature."  Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).

4.     "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syl. Pt. 2*, State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

5.     An agreement to extend the period of time for an applicable regulatory board to issue a final ruling on a complaint pursuant to West Virginia Code § 30-1-5(c) is not barred by the fact that the applicable board is also the complainant.

ARMSTEAD, C.J.:

Petitioner Jose Ravelo, DDS (hereinafter "Petitioner"), seeks a writ of prohibition directing the West Virginia Board of Dentistry (hereinafter "the Board") to cease its current investigation of him and to prohibit the Board from taking any further disciplinary action against him based upon his treatment of a patient in 2021. Petitioner asserts that the Board violated the statutory time limitation for resolution of disciplinary actions and violated his due process rights.

After careful consideration of the parties' arguments, legal authorities, and the appendix record, this Court finds that the Board complied with West Virginia Code § 30-1-5(c), which permits an extension of time for the Board to issue a final ruling. Because the extended time period had not yet expired when Petitioner filed the instant petition, we deny his request for a writ of prohibition.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a board-certified oral surgeon who currently practices at Mountain State Oral & Facial Surgery.[1] On August 19, 2021, Petitioner performed a surgical procedure on F.S., a seventy-four year old man who presented with an infection at

---

[1] Petitioner has been licensed in West Virginia since 2018.

1

his jaw line.[2]  Petitioner determined that a surgical procedure was the best solution to remove the infection.  Prior to performing the surgical procedure, Petitioner was aware that F.S. was taking Plavix, a blood thinner designed to reduce the risk of heart attacks.  Petitioner did not direct F.S. to stop taking Plavix ahead of his upcoming surgery.  Petitioner performed surgery on F.S. at 8:00 a.m. on August 19, 2021, and after being kept for evaluation, F.S. was discharged to return home.  Later the same afternoon, Petitioner's office placed a post-operative call to F.S.'s home and was informed by F.S.'s wife that he was not doing well.  Thereafter, a video call occurred to better assess F.S.'s condition.  During the call, Petitioner noted swelling in the floor of F.S.'s mouth, and he asked F.S. to return to the office.  After F.S. returned to Petitioner's office, Petitioner noted "swelling and clotting on the floor of F.S.'s mouth."  After draining the area to reduce the swelling, Petitioner recommended that F.S. go to the emergency room for evaluation.

F.S. was transported by ambulance to the Emergency Department at Princeton Community Hospital where he was described as being in "significant acute distress."  F.S. was admitted to the hospital where he remained for nine days.  He was on a ventilator for five of the nine days while he was hospitalized.

---

[2] We use initials where necessary to protect the identities of those involved in this case.  *See* W. Va. R. App. P. 40(e).

2

A few weeks following F.S.'s surgery, Petitioner's counsel sent a letter to the Board informing it of the complication following F.S.'s surgery.[3] West Virginia Code § 30-4-19(g)(18) authorizes the Board to take disciplinary action against a licensee, certificate holder, or permittee who "[f]ail[s] to report to the board within 72 hours of becoming aware of any life threatening occurrence, serious injury, or death of a patient resulting from the licensee's [] dental treatment." *Id.* Although Petitioner self-reported pursuant to West Virginia Code § 30-4-19(g)(18), he noted that he did not believe that F.S.'s complication met the statutory requirements of "life threatening occurrence" or "serious injury[,]" and that he self-reported out of an abundance of caution. Petitioner informed the Board, among other things, that F.S. had a "bleeding complication and hematoma requiring precautionary emergency room care." Further, Petitioner indicated that F.S. "remained in the hospital for a few days and was discharged in good condition."

Following receipt of Petitioner's self-report, the Board issued a subpoena for F.S.'s medical records from Princeton Community Hospital. By letter dated February 14, 2022, Susan M. Combs, Executive Director of the Board, informed Petitioner that after reviewing his records and F.S.'s records from Princeton Community Hospital, the Complaint Committee of the Board "believes that violations of the standard of care in the practice of dentistry may have occurred" and "recommended to the Board that a complaint be filed in this matter." Specifically, the Complaint Committee expressed concerns that

---

[3] The letter was dated September 7, 2021.

Petitioner "did not consult [F.S.'s] physician, nor advise [F.S] to stop taking Plavix prior to his surgery." In addition, the Complaint Committee believed that Petitioner nicked an artery during F.S.'s surgery, and because F.S. was still taking Plavix at a therapeutic level, such action resulted in "bleeding and swelling that required a nine day hospital stay, in which [F.S.] was on a ventilator for five of those days."

By letter dated March 14, 2022, Petitioner responded to the complaint. Petitioner attached an article from the *American Journal of Medicine*, which he maintains "support[s] his decision to continue F.S.'s Plavix treatment." By letter dated April 11, 2022, Petitioner forwarded a report from Caroline M. Webber, DDS, for the Complaint Committee's review and consideration. Petitioner asserts that Dr. Webber concluded in her report that Petitioner did not violate the standard of care.

On July 12, 2022, the Board issued a subpoena to Petitioner seeking CT scans taken between June 1, 2021, and October 31, 2021, related to F.S. On July 26, 2022, the Board provided Petitioner with a status report concerning the complaint at issue in this matter. At that time, the Board indicated that it was "still reviewing and considering the matters alleged." In addition, the Board indicated that, if it found probable cause regarding the allegations in the complaint, it would issue a charging statement. The Board further advised Petitioner in the July 26, 2022 status report that, if it did not find probable cause, it would notify Petitioner by letter. In May 2023, Petitioner, through his counsel, forwarded a letter to the Board asserting, among other things, that the Board had failed to

4

adhere to the time requirements set forth in West Virginia Code § 30-1-5(c) and that its investigation was contrary to law. Petitioner also included a Freedom of Information Act (hereinafter "FOIA") request for, among other things, the Board's investigatory file.

In July 2023, the Board responded to Petitioner's FOIA request by providing copies of F.S.'s medical records from Princeton Community Hospital, an expert report from Michael B. Lee, DDS, and correspondence regarding an extension of time for the Board to issue a final ruling in Petitioner's matter.[4] The extension was requested by John E. Bogers, DDS, President of the Board to Susan M. Combs, Executive Director of the Board, pursuant to West Virginia Code § 30-1-5(c), which permits the party filing a complaint and the Board to "agree in writing to extend the time for the final ruling." *Id.* The extension extended the time for the Board to issue its final ruling from July 20, 2023, to July 20, 2024.

On July 19, 2023, Petitioner filed the petition for a writ of prohibition that is the subject of this action.[5]

---

[4] These documents were included as part of the "second rolling production of responsive FOIA documents."

[5] On November 15, 2023, this Court issued a rule to show cause directing the Board to show cause why a writ of prohibition should not be awarded as prayed for by Petitioner. Pursuant to Rule 16(j) of the West Virginia Rules of Appellate Procedure, "[u]nless otherwise provided, the issuance of a rule to show cause in prohibition stays all further proceedings in the underlying action for which an award of a writ of prohibition is sought."

## II. STANDARD OF REVIEW

Petitioner invokes this Court's original jurisdiction in prohibition asserting that the Board exceeded its legitimate powers by failing to reach a resolution within the statutory maximum time to resolve the allegations against him and by launching its own investigation without sufficient cause. *See* Syl. Pt. 1, *State ex rel. Johnson v. Reed*, 219 W. Va. 289, 633 S.E.2d 234 (2006) ("'The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction.' Syl., *State ex rel. Vineyard v. O'Brien*, 100 W. Va. 163, 130 S.E. 111 (1925)."). Because Petitioner asserts that the Board "exceeded the statutory limits on its power and jurisdiction," we are guided by the following:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

6

With these standards in mind, we will now consider whether a writ of prohibition is warranted in this case.

## III.  ANALYSIS

Petitioner seeks a writ of prohibition, and because *Hoover* requires that "the existence of clear error as a matter of law, should be given substantial weight," we begin by assessing Petitioner's argument that the Board erred as a matter of law.

## A.  TIME REQUIREMENTS SET FORTH IN WEST VIRGINIA CODE § 30-1-5(C)

Petitioner asserts that the Board's investigation exceeded the statutory time limits imposed by West Virginia Code § 30-1-5(c).  In examining this statute, we are mindful of our rules of statutory construction.  "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). In other words, "[w]here the language of a statutory provision is plain, its terms should be applied as written and not construed."  *DeVane v. Kennedy*, 205 W. Va. 519, 529, 519 S.E.2d 622, 632 (1999).

7

With these rules in mind, we examine West Virginia Code § 30-1-5(c), which governs matters before administrative boards, including the Board of Dentistry, and which provides:

> Every board referred to in this chapter shall investigate and resolve complaints which it receives and shall, within six months of the complaint being filed, send a status report to the party filing the complaint and the Respondent by certified mail with a signed return receipt and within one year of the status report's return receipt date issue a final ruling, unless the party filing the complaint and the board agree in writing to extend the time for the final ruling. The time period for final ruling shall be tolled for any delay requested or caused by the respondent or by counsel for the respondent and in no event shall a complaint proceeding be dismissed for exceeding the time standards in this section when such overage is the result of procedural delay or obstructive action by the accused or his or her counsel or agents.

Prior to 2005, this statute did not contain any specific deadlines for resolution of complaints. It provided "merely that '[e]very board referred to in this chapter has a duty to investigate and resolve complaints which it receives and shall do so in a timely manner.' W. Va. Code § 30-1-5(b) (1996)." *State ex rel. Miles v. W. Va. Board of Registered Professional Nurses*, 236 W. Va. 100, 105, 777 S.E.2d 669, 674 (2015). In 2005, the time requirements contained in subsection (c) were added.

In reviewing the time requirements imposed by West Virginia Code § 30-1-5(c), we must first identify when the operative complaint was filed.[6] Initially, we conclude that Petitioner's self-report, that occurred in September of 2021, did not constitute the complaint in this matter. Petitioner's self-report was "made out of an abundance of caution." Further, it specifically indicated that Petitioner "does not believe that a reasonable interpretation of [F.S.'s] complication would meet the statutory requirements of 'life threatening occurrence', nor 'serious injury'." We agree with Petitioner that dentists may alert the Board of their own misconduct. However, in this case, Petitioner did not admit to any misconduct and his report merely advised the Board of the basis for a potential complaint. Therefore, we do not find the September 2021 self-report to be a complaint. Instead, Petitioner's self-report began the *process* that eventually led to the filing of a complaint.

By letter dated February 14, 2022, the Board informed Petitioner that the Complaint Committee recommended that a complaint be filed against him.[7] The Complaint Committee expressed concern that Petitioner had not consulted with F.S.'s physician nor had he advised F.S. to stop taking Plavix prior to his surgery. The Complaint Committee also believed that Petitioner nicked an artery during F.S.'s dental surgery which, combined

---

[6] Petitioner indicates that this Court need not decide whether his self-report is the operative "complaint" because there is no scenario under which the Board can prevail on the statutory time limits issue. As explained below, we disagree.

[7] The February 14, 2022 correspondence referenced the case number that had been assigned to the complaint: Case Number 2022-DB-0006D.

with F.S.'s continued use of Plavix, caused the bleeding and swelling that required a nine day hospital stay. Petitioner was given thirty days to respond, which he did by letter dated March 14, 2022. In his March 14, 2022 letter, Petitioner indicated that he was responding to the "complaint" regarding his care of F.S., and he referenced Case No. 2022-DB-0006D. For these reasons, we conclude that the Board's correspondence dated February 14, 2022, serves as the operative complaint in this matter. *See* W. Va. Code § 30-4-19(a) ("The [B]oard may initiate a complaint . . . upon receipt of credible information[.]"). Having determined that the complaint was filed on February 14, 2022, we proceed to examine whether the Board complied with the required timeframes set forth in West Virginia Code § 30-1-5(c).

"The plain language of [West Virginia Code § 30-1-5(c)] requires the issuance of an interim status report within six months" of the complaint being filed. *Miles*, 236 W. Va. at 106, 777 S.E.2d at 675. In this case, such status report would have been due on or about August 14, 2022. The Board complied with this requirement by sending a status report dated July 26, 2022. The status report states, in part, as follows:

> The purpose of this letter is to provide you with a status report concerning the complaint filed against you by the Board. At this time, the Complaint Committee of the Board is still reviewing and considering the matters alleged.

> We will attempt to keep you informed and notify you as to the Board's decision regarding the complaint. Should the Board find probable cause as to the allegations in the complaint, the Board will issue a charging statement against

10

you. If no probable cause is found, the Board will notify you
by letter that no further action will be taken.

Petitioner argues that the Board's status report is conclusory, offers "no insight into what the Board has done, what additional steps it plans to take, or when it plans to take them," and therefore, does not constitute a valid status report. Petitioner maintains that to constitute a proper status report, this report should have included the following types of information: (1) information regarding what the Board had done so far as it relates to documents that had been reviewed; (2) identification of concerns with Petitioner's conduct; and (3) an explanation regarding the next step in the case. Petitioner further asserts that, without a valid status report, the Board's time to investigate Petitioner's treatment of F.S. expired six months after the Board's complaint, which would have been in August 2022.

Petitioner concedes that our Court has not addressed the precise information that the Board must include in a status report required by West Virginia Code § 30-1-5(c). Further, the plain language of the statute does not address the specific information that must be included in status reports. West Virginia Code § 30-1-5(c) requires boards to "send a status report to the party filing the complaint and the Respondent by certified mail with a signed return receipt." *Id.* Given the lack of case law directly addressing this issue, Petitioner relies upon cases that discuss generally how boards should conduct investigations and which reiterate the responsibility of boards to act diligently.

11

In *Miles*, this Court granted a writ of prohibition against the West Virginia Board of Registered Professional Nurses because the nursing board failed (1) to resolve a complaint within one year of its status report and (2) to acknowledge the need for an extension of time until after the deadline for resolution had passed. The status report in *Miles*, which simply stated that the matter was "under continued investigation and review by the Board staff" was not dispositive, and this Court did not discuss any potential deficiencies with the substance of that status report. *Id.* at 103, 777 S.E.2d at 672.[8] Given the wide range of professions and occupations governed by Chapter 30 of the West Virginia Code, we decline to impose specific subjects that must be contained in the required status report. Should the Legislature desire to codify any such requirements, it certainly may do so in the future.

The status report in this matter was dated July 26, 2022. Petitioner argues that the Board was required to issue its final ruling on or before July 26, 2023. However, the "West Virginia Board of Dentistry Agreement to Extend Deadline for Final Ruling" indicates that the Board was required to issue its final ruling in this matter on or before July 20, 2023. Although the parties differ as to which date in July 2023 the final ruling was

---

[8] This Court noted that the status report was not sent via certified mail and that a second status report was sent several months later.

12

required, they appear to agree that, absent an appropriate extension, such resolution was required by July 2023.

Prior to both of the dates the parties believe apply, the Executive Director of the Board and the President of the Board agreed to a one-year extension for the issuance of the final ruling in this matter pursuant to West Virginia Code § 30-1-5(c), which permits "the party filing the complaint and the board" to agree to an extension. *Id.* Petitioner argues that the extension clause contained in West Virginia Code § 30-1-5(c) does not apply in cases where the Board itself initiates a complaint. However, we identify no such prohibition in our statute. There is no statutory restriction on the length of an extension, and importantly, the statute does not exclude a board from availing itself of this particular provision in cases in which a board initiates a complaint.[9] Therefore, we hold that an agreement to extend the period of time for an applicable regulatory board to issue a final ruling on a complaint pursuant to West Virginia Code § 30-1-5(c) is not barred by the fact that the applicable board is also the complainant. In the instant case, there has been only one extension by agreement, which is authorized by West Virginia Code § 30-1-5(c). Therefore, the time for final resolution of the complaint has not expired, and we, therefore,

---

[9] We are mindful of Petitioner's concerns that boards may attempt to take advantage of this provision by extending the deadline for final resolution by an unreasonable period of time. In such case, a licensee, certificate holder, or permittee may have a due process claim. *See infra.* However, this was not the case here.

13

conclude that the Board has not violated the statutory time limits imposed upon disciplinary actions.

## B.    INVESTIGATION

Petitioner next argues that the Board lacked an adequate basis for investigating his treatment of F.S. and failed to abide by the statutory procedures for launching such investigation.  The Board is empowered "to issue subpoenas, *to conduct investigations* and hire an investigator and to take testimony and other evidence concerning any matter within its jurisdiction."  West Virginia Code § 30-1-5(b) (emphasis added).  Further, the Board is required to "investigate and resolve complaints which it receives[.]"  West Virginia Code § 30-1-5(c).  Finally, the Board "may initiate a complaint … upon receipt of credible information."  W. Va. Code § 30-4-19(a).

Petitioner maintains that his September 2021 self-report did not constitute "credible information" supporting the Board's "investigation."  However, the requirement regarding "credible information" relates to the Board's authority to *initiate* a complaint.  *See* W. Va. Code § 30-4-19(a) ("The board may initiate a complaint upon … receipt of credible information[.]") Petitioner maintains that even if his self-report constituted credible information, the correct next step for the Board would have been to issue a complaint against him, not to conduct an investigation.

As we noted above, the Board is authorized to conduct investigations. *See* West Virginia Code § 30-1-5(b).  If this Court were to agree with Petitioner's position, the

14

Board would have been limited to two courses of action – it could have either accepted Petitioner's opinion that there was no "life threatening occurrence" or "serious injury" or it would have been forced to file a complaint against Petitioner without assessing the credibility of the information.

In the instant case, the Board properly conducted an initial investigation of Dr. Ravelo's treatment of F.S. in order to determine whether the information it received was "credible" and thus warranted the filing of a complaint. By investigating, the Board determined that F.S. had been hospitalized for nine days with five of those days on a ventilator, not for a "few days" as Petitioner indicated in his self-report. In addition, the investigation assisted the Complaint Committee in forming its belief that Dr. Ravelo had nicked an artery during F.S.'s surgery which, combined with F.S.'s continuing use of Plavix at a therapeutic level, caused bleeding and swelling that resulted in his nine-day hospital stay. For these reasons, among others, the Complaint Committee disagreed with Dr. Ravelo's characterization contained in his self-report and instead deemed the incident as a "life threatening occurrence" and "serious injury."

Petitioner relies upon West Virginia Code 30-1-5(c), which requires the Board to "investigate and resolve complaints." Since the Board takes the position that Petitioner's self-report was not a complaint, Petitioner believes that the Board improperly investigated his self-report by subpoenaing F.S.'s hospital records when there was not yet an active complaint against him. Before this Court, Petitioner argues that this is "no mere technical error." However, in his self-report, Petitioner acknowledged that the Board

15

would conduct an investigation following receipt of his self-report. Specifically, the self-report indicated that "Dr. Ravelo's intention is to assist and cooperate with the Board's investigation into this incident in any way that he can, and he pledges complete transparency in doing so." We believe that Petitioner identified the proper next step following the Board's receipt of his self-report: an investigation. Moreover, West Virginia Code § 30-4-19(a) permits the Board to initiate a complaint upon its receipt of "credible information." The requirement that the information be "credible" necessarily requires at least an initial investigation of its veracity. Petitioner's assertion that no investigation may take place until after a formal complaint was filed is inconsistent with the language of the statute. Accordingly, we are unpersuaded by Petitioner's argument that the investigation with which he agreed to cooperate with improper.

## C.    DUE PROCESS

Even though we conclude that the Board has not exceeded the statutory time limits, we must now examine Petitioner's assertion that the Board's delay in resolving the instant complaint violates his constitutional right to due process. Petitioner alleges a violation of Article III, Section 17 of the West Virginia Constitution, which provides that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." W. Va. Const. Art. III, § 17. "Due process is succinctly stated in article III, § 10 of the West Virginia Constitution: 'No person shall

16

be deprived of life, liberty, or property, without due process of law, and judgment of his peers.'" *SER Hoover v. Smith*, 198 W. Va. 507, 511, 482 S.E.2d 124, 128 (1997).

In support of his due process argument, Petitioner relies upon cases involving delays by the Office of Administrative Hearings in issuing drivers' license-revocation decisions. *See Reed v. Staffelino*, 239 W. Va. 538, 803 S.E.2d 508 (2017) and *Frazier v. Derechin*, 246 W. Va. 36, 866 S.E.2d 101 (2021). The glaring difference between those cases and the instant case is that there were "no time constraints imposed by rule or statute governing the issuance of decisions by [the Office of Administrative Hearings]." *Frazier v. Derechin*, *Id.* at 41, 866 S.E.2d at 106. Due process was implicated in *Frazier* because it operated as an "outer limit" due to the *absence* of statutory time constraints. *Id.* By contrast, in the instant case, the Legislature has imposed explicit time constraints for the Board to resolve complaints and provides a statutory process to extend such deadlines. The Board is not in violation of the statutory time limits imposed upon disciplinary actions.[10]

---

[10] Despite not being in violation of the statutory time limits imposed upon disciplinary actions, Petitioner has identified instances in which a board could potentially violate a licensee's due process rights even though it is not technically in violation of statutory time limits. Petitioner asserts that if this Court denies his petition for a writ of prohibition, the Board could request multiple extensions for years to come. Admittedly, this Court has seen at least one instance in which a board has permitted a case to languish well past the statutory time limits without obtaining an extension to issue a final ruling. *See State ex rel. Fillinger v. Rhodes*, 230 W. Va. 560, 741 S.E.2d 118 (2013) (The Board of Examiners for Registered Professional Nurses repeatedly continued hearings without written agreements between the complainants and the Board to extend the time for a final ruling.) We take this opportunity to caution the Board that, although it is not in violation

17

"The requirements of due process are not reducible to a static formula, but rather are sensitive to the facts and circumstances of a given case." *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 n. 21 (1996). In the instant case, Petitioner relies upon the Board's average time to resolve a complaint and the statute's time constraints, which he describes as the Legislature's "intent that all professional licensing investigations be completed within eighteen months for both due process and public safety reasons." However, Petitioner again fails to acknowledge that the Legislature clearly contemplated that some matters would not be resolved within eighteen months by tolling the time period for a final ruling "for any delay requested or caused by" a respondent in a complaint proceeding and by authorizing boards and complainants to "agree in writing to extend the time for the final ruling." W. Va. Code § 30-1-5(c).

As we have previously concluded, "the flexibility required by due process doctrines and the range of variables that can affect fairness . . . preclude our imposing specific time limits" in certain cases. *Hutchison* at 156, 479 S.E.2d at 666. We believe that this is such a case, and we reject Petitioner's argument that the Board through its actions to date, has violated his constitutional right to due process.

D.    REMAINING *HOOVER* FACTORS

_____

of the statutory time limits, we see no reason why this matter should not be resolved within the extension already granted, if not even sooner.

18

Lastly, Petitioner argues that the remaining four factors enunciated in *Hoover* support the issuance of a writ of prohibition. We disagree. The first *Hoover* factor directs this Court to examine whether Petitioner "has no other adequate means, such as direct appeal, to obtain the desired relief." Syl. Pt. 4, in part, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12 (1996). Petitioner acknowledges that there is a statutory right to seek judicial review of Board decisions. His impatience with the Board's failure to act does not tip the weight of this factor in his favor.

We are likewise not persuaded by Petitioner's arguments in support of the second factor, which directs this Court to examine "whether [Petitioner] will be damaged or prejudiced in a way that is not correctable on appeal." *Id.* Petitioner asserts that he has been damaged because he will be forced to wait and use the "ordinary judicial review procedure[,]" "continue to endure the cloud over his license and delay his business plans[,]" and "be compelled to go through a contested hearing and perhaps appeal from a final judgment." These complaints generally describe the disciplinary process to which every other licensee, certificate holder, and permittee of the Board is subject during a disciplinary action. We refuse to conclude that Petitioner is prejudiced because he will have to proceed through the Board's disciplinary process. With respect to the fourth factor, Petitioner concedes that he cannot point to a "long record of untimely Board actions," and we, therefore, conclude that this factor does not warrant the issuance of a writ in this case. Finally, Petitioner generally asserts that his petition raises multiple issues of first impression regarding "the application of West Virginia Code § 30-1-5(c) and constitutional

due process to cases in which a licensee files a self-report." Because we have concluded that the Board has not violated the statutory time limits imposed upon disciplinary actions and that Petitioner's constitutional right to due process has not been violated by the Board, we reject Petitioner's assertion that this matter raises multiple issues of first impression.[11]

## IV. CONCLUSION

For the foregoing reasons, the writ of prohibition is denied and the stay is lifted contemporaneously with the issuance of the Court's mandate.

Writ denied.

---

[11] Because Petitioner has not prevailed, we deny his request for the Board to pay his reasonable attorney's fees and costs.