**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

Fall 2024 Term

_____

No. 23-ICA-308

_____

**FILED**

**November 12, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

DONDI S. STEMPLE,
Petitioner Below, Petitioner

v.

WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD,
Respondent Below, Respondent.

_____

Appeal from the West Virginia Consolidated Public Retirement Board

Anne B. Charnock, Hearing Examiner

Administrative Action: In Re: Dondi Stemple

VACATED AND REMANDED

_____

Submitted: September 25, 2024

Filed: November 12, 2024

Lonnie C. Simmons, Esq.
DiPiero Simmons McGinley &
Bastress, PLLC
Charleston, West Virginia
Counsel for Petitioner

J. Jeaneen Legato, Esq.
Charleston, West Virginia
Counsel for Respondent

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Dondi S. Stemple ("Ms. Stemple") appeals the June 7, 2023, Recommended Decision of the Hearing Examiner, which was adopted by the West Virginia Consolidated Public Retirement Board (the "Board") on June 28, 2023. This Recommended Decision held that the Board did not breach its fiduciary duty owed to Ms. Stemple. Having reviewed this matter, we conclude that the Board, through its adoption of the Recommended Decision, failed to address the key issue on appeal as contained in the October 17, 2022, request. Accordingly, we remand this case to the Board with instructions to address West Virginia Code §§ 18-7A-14c(a) and 18-7B-21(a) (2022) in the administration and management of Ms. Stemple's retirement funds.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Ms. Stemple[1] has been teaching in West Virginia and Virginia public schools since 1977. Ms. Stemple was a member of the Teachers' Retirement System ("TRS") and the Teachers' Defined Contribution System ("TDC"). She began her first term as an educator in West Virginia in 1977. In 1986, Ms. Stemple signed a TRS form entitled "Application for Withdrawal from Membership in the State Teachers Retirement System." This version of the withdrawal form required signature notarization. As a result of this withdrawal made by Ms. Stemple, the State of West Virginia sent her a check totaling $5,333.43.

---

[1] Birthname is Dondi Donna Sue Stemple; however, at various times she has used the last names of Laney and Shears as a result of previous marriages.

1

From 1992 through 2002, Ms. Stemple was employed by the Pocahontas County School Board. In August 2002, Ms. Stemple married John V. Laney, and moved to Winchester, Virginia. In 2012, divorce proceedings were initiated between the couple. During the divorce proceedings, Ms. Stemple learned that Mr. Laney had a gambling problem, and had opened ten credit cards and two lines of credit in her name. Subsequently, she filed for bankruptcy and was discharged in October 2013. In 2016, Mr. Laney died.

In 2016, Ms. Stemple began her final teaching stint with the Pocahontas County School Board. She remained employed as a teacher in West Virginia until her retirement in 2023. In the Fall of 2022, Ms. Stemple requested the Board calculate her pension benefits. After receiving the calculations, Ms. Stemple learned that a total of $16,437.62 had been removed from her retirement account, allegedly without her permission.[2] Ms. Stemple contacted the Board regarding the alleged theft. The Board notified the West Virginia State Police. The State Police instructed the Board to have Ms. Stemple contact them directly to begin an investigation. Ms. Stemple alleges her deceased ex-husband, Mr. Laney, was responsible for the fraudulent withdraw.

With respect to the disputed withdrawals, the Board produced a TRS form entitled "WV Teachers' Retirement System (TRS) Application for Refund of Accumulated Contributions" bearing a signature "Dondi S. Shears Laney" and dated "10-24-02."

---

[2] These benefit calculations are not provided to members on a regular basis, only upon request.

2

Another TRS form entitled "The State of West Virginia Teachers' Defined Contribution Retirement System Request for Distribution of Benefits" bears a signature "Dondi Shears Laney" and is dated "12-4-02." These signatures were not notarized, and these forms did not include a place for a notary public to sign. Ms. Stemple's name in the Board's file during this time was "Donna or Dondi Stemple" and the address in the Board's file was her West Virginia address.

On November 27, 2002, checks from the State of West Virginia in the amounts of $384.54 and $74.62 were issued to "Laney Dondi." On January 16, 2003, the Board sent a letter summarizing the details of these payouts to "Dondi Shears-Laney" at "604 Creon Street, Winchester, Virginia 22601." At that time, Ms. Stemple's actual address was "604 Green Street, Winchester, Virginia 22601." On January 16, 2003, two more checks from the State of West Virginia in the amount of $8,194.25 and $4,496.69 were issued to "Dondi S. Shears Laney." Ms. Stemple maintains that the signatures on the applications and the check endorsements appear different than her 1986 notarized signature.

After learning of these withdrawals in 2022, Ms. Stemple, through her attorney, requested an appeal and administrative hearing before the Board. Her appeal alleged that a calculations error had occurred and that her account should be credited with the unauthorized withdrawn amounts. An evidentiary hearing was held on April 18, 2023. At the hearing, Ms. Stemple acknowledged that she had authorized an earlier withdrawal

from her TRS account in 1986 and that her signature was notarized on that application. She denied applying for or signing any forms associated with the later withdrawals. Ms. Stemple testified that her late ex-husband, Mr. Laney, handled all the finances, including the bills and taxes. She stated that he worked for the Board of Education in Virginia. Due to her ex-husband's handling of the finances, she was unable to produce any tax returns or other financial documentation for that time period. Ms. Stemple testified that she had no knowledge of the 2002 request and withdrawals until 2022.

Ms. Teresa Miller, Deputy Director and Chief Operating Officer at the Board, testified that Ms. Stemple's address was changed from a West Virginia address to a Virginia address upon receipt of the application to withdraw her retirement funds. Ms. Miller stated that there was no policy, statutory requirement, or other rule that required the Board to communicate directly with any member seeking to withdraw from their retirement. Ms. Miller testified that the requirement of notarized signatures on these withdrawal forms would be too costly and an inconvenience for State employees. She stated that the notarization was required for a withdrawal in 1986 by the TRS. She testified that the Board processes over 2,500 refunds annually with only three staff members and that it would be unduly burdensome for those staff members to directly contact every individual to verify the withdrawal. Ms. Miller also testified that a notarized signature was not required by policy or statute and the only verification procedure the Board has is to confirm that the individual is no longer employed.

The Hearing Examiner concluded that the Board's fiduciary duty did not include any additional steps to verify an individual's retirement withdrawal that were not required by statute or Legislative rule. Focusing on the alleged breach of fiduciary duty, the Hearing Examiner recommended Ms. Stemple's appeal be denied. The Board fully adopted this recommendation in its June 28, 2023, final order. It is from this order that Ms. Stemple now appeals.[3]

## II.     STANDARD OF REVIEW

Our review of this matter is governed by the State Administrative Procedures Act, which provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord.* W. Va. Code R. § 2-2-12 (2023) ("[a]ny party adversely affected by a final order or decision of the Board has the right to appeal such

---

[3] This Court held oral argument on September 25, 2024.

order or decision to the Intermediate Court of Appeals in accordance with W. Va. Code § 29A-5-4 and W. Va. Code § 51-11-4(b)(4).”). In reviewing decisions by administrative agencies, “[t]he ‘clearly wrong’ and the ‘arbitrary and capricious’ standards of review are deferential ones which presume an agency’s actions are valid as long as the decision is supported by substantial evidence or by a rational basis.” Syl Pt. 3, *In Re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). An appeal of a decision as to the conclusions of law and application of law to the facts, is reviewed *de novo*. *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

Typically, appeals taken on questions of law, fact, or both, shall be heard upon the assignments of errors as set out in the briefs of the appellants. However, when considering whether an agency’s decision is affected by an error of law, the court may consider and decide errors which are not assigned or argued. W. Va. Code § 29A-5-4(e). With this standard in mind, we consider the issues raised on appeal.

### III. DISCUSSION

On appeal, Ms. Stemple alleges several assignments of error, which can be reduced to a single accusation. Ms. Stemple argues that the Board failed to satisfy its fiduciary duty owed to her. After hearing oral argument of the parties and reviewing the record and the applicable law, we find the Board failed to address the central issue on appeal, whether an error occurred involving alleged fraudulent distributions which would invoke the provision of the applicable error statutes, West Virginia Code §§ 18-7A-14c

6

(2022) and 18-7B-21 (2022). The record clearly demonstrates that such alleged error in the calculation of benefits was engrained in this action from its inception. The Board's decision was directly affected by an error of law regarding the relevance of such error and the duty to correct it, if established.[4] Upon our finding that the Board insufficiently addressed the alleged error, we find it unnecessary to specifically address each of Ms. Stemple's assignments. Accordingly, the Board's decision is vacated and remanded for consideration consistent with this opinion.

On July 1, 1991, the Board became responsible for the administration and management of the Teachers' Retirement System and the Teachers' Defined Contribution

---

[4] Pursuant to W. Va. Code § 29A-5-4(e), this Court may consider and decide errors which are not assigned or argued when the underlying administrative decision is affected by an error of law which when considered would have an effect on the outcome. Even absent such statutory language, the West Virginia Rules of Appellate Procedure, Rule 10(c)(3) provides that "In its discretion, the Intermediate Court or the Supreme Court may consider a plain error not among the assignments of error but evident from the record and otherwise within its jurisdiction to decide." Under a "plain error" doctrine, "there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *See Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185, 195 (2024). In the present matter, the Board's failure to address the central basis for the appeal, the error regarding the benefit calculations, is indeed an error which should have been addressed below. A determination regarding the existence of such error and the applicability of the error correction statutes is essential to defining the parameters of what action, if any, the Board must take under their obligations to Ms. Stemple. If an error subject to the error correction statutes is found, it becomes the statutory obligation of the Board to correct such error, regardless of the nature of said error or fault of either party. The determination regarding the alleged error will absolutely affect a substantial right of all parties involved and without a review of such will undermine the fairness and public reputation of these proceedings. For the Board to have completely disregarded whether an error occurred is contrary to their statutory duty and fiduciary obligations.

Retirement System. *See* W. Va. Code §§ 18-7A-4 (1990) and 18-7B-5 (1990). To effectuate the proper administration of the retirement system, the Board was provided with all necessary powers to take in account its highest duty, the proper safeguarding and protection of its members' and employers' contributions. The "body corporate" of the Board constitutes a trust, with the terms spelled out in statute. Syl. Pt. 4, *W. Va. Consol. Pub. Ret. Bd. v. Clark*, 245 W. Va. 510, 859 S.E.2d 453 (2021); accord W. Va. Code § 5-10-1 et seq. (1990). The Board's trustees have "the highest fiduciary duty to maintain the terms of the trust, as spelled out in the statute." *Clark*, 245 W. Va. at 513, 859 S.E.2d at 456, Syl. Pt. 5. The Board has a "fiduciary duty to protect the fund and the interests of all beneficiaries thereof, and it must exercise due care, diligence, and skill in administering the trust." *Clark*, 245 W. Va. at 513, 859 S.E.2d at 456, Syl. Pt. 6. In the execution of such duty, the Board is responsible for the correction of any errors in the retirement system. W. Va. Code §§ 18-7A-14c and 18-7B-21. This matter arises from an alleged error regarding the distribution of Ms. Stemple's retirement benefits and subsequent benefit calculations based on the remaining funds. The Board, in its adoption of the Recommended Decision, felt compelled to limit its inquiry to its fiduciary obligations, disregarding whether an error had actually occurred and its responsibility to correct such errors.

West Virginia Code § 18-7A-14c(a) provides: "Upon learning of any errors, the board shall correct errors in the retirement system in a timely manner whether the individual, entity or board was at fault for the error with the intent of placing the affected

individual, entity and retirement board in the position each would have been in had the error not occurred." This language pertaining to the State Teachers' Retirement System is aligned with the specific language under the Teachers' Defined Contribution Retirement System, contained in West Virginia Code § 18-7B-21(a), which states: "Upon learning of any errors, the board shall correct errors in the retirement system in a timely manner whether the individual, entity or board was at fault for the error with the intent of placing the affected individual, entity and retirement board in the position each would have been in had the error not occurred." It is a clear statutory duty that the Board must timely correct errors in its system, if established, regardless of the nature of such error and regardless of whether such error constitutes a breach of fiduciary duty.

When a statute plainly expresses the intent of the Legislature, we do not construe or interpret it. *Clark*, 245 W. Va. at 518, 859 S.E.2d at 461. We apply it. *See* Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). After comparing West Virginia Code §§ 18-7A-14c(a) and 18-7B-21(a), we conclude that those statutes clearly express the Legislature's intent that errors must be corrected by the Board to ensure proper administration of the retirement funds. The intended usage of the word "error", as contained in each section, is not defined or otherwise limited in the chapter. "In the absence of any specific indication to the contrary, words used in a statute will be given their

9

common, ordinary and accepted meanings." *Clark*, 245 W. Va. at 518, 859 S.E.2d at 461 (citing Syl. pt. 1, *Tug Valley Recovery Center v. Mingo County Commission*, *W.Va.*, 164 W.Va. 94, 261 S.E.2d 165 (1979)). The common meaning of "error" is a mistake; an assertion or belief that does not conform to objective reality; a belief that what is false is true or that what is true is false. *Error*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Respondent argues that a broad usage of the word "error" incorrectly expands the intent behind the *correction of errors* section in these articles; however, it has provided nothing to support its assertion. Absent statutory language or case precedent to the contrary, this Court is compelled to give "error" its common meaning, which we find is supported by the fiduciary status of the Board. This Board is entrusted with the people's contributions, whether it be individually or by their employer. When an error has occurred, the Board is the only entity able to correct such error.

The Board, being a state agency, is empowered by statute, and subject to the administrative procedures act. *See State ex rel. Hoover v. Berger*, 199 W. Va. 12, 16, 483 S.E.2d 12, 16 (1996) ("[a]n administrative agency is but a creature of statute, and has no greater authority than [that] conferred under the governing statutes."). As an administrative agency, the Board must adhere to all statutory requirements, including any safeguards prescribed to protect the members' contributions. The due care necessary for administering

10

the trust is accompanied by an obligation to address any errors once the Board learns of such errors.

In the present case, Ms. Stemple alleged an error occurred when the Board distributed her retirement funds to her ex-husband. The Board has disputed that such distribution was an error. Ms. Stemple possesses the burden to establish that an error has been committed on her account which would invoke the error statutes. If the Board finds that an error which invokes the error statutes occurred, then the Board must make the correction as required by law.

The Board additionally argues with respect to the TDC system that members' accounts are individualized and not pooled. Accordingly, the Board alleges that they would be unable to reinstate any of the funds from Ms. Stemple's account previously distributed. However, such a position is contrary to the statutory requirements of West Virginia Code §18-7B-21(f) which specifically mandates that the Board fully reimburse any individual who is receiving less than they are entitled to receive from the retirement system due to any error which occurred. As this section specifically deals with the TDC, it is clear that the Legislature contemplated and mandated that the Board would reimburse funds which would otherwise have been available to a plan member had an error not occurred. Accordingly, we reject the Board's argument in this regard.

11

## IV. CONCLUSION

For the foregoing reasons, the June 28, 2023, Decision of the Board is hereby vacated and remanded for further proceedings consistent with this opinion.

Vacated and Remanded.